## McLISH v. ROFF.

ERROR TO THE UNITED STATES COURT FOR THE INDIAN TERRITORY.

No. 1158. Submitted October 13, 1891. — Decided December 7, 1891.

Under section 5 of the Act of March 3, 1891, c. 517, 26 Stat. 826, " to establish Circuit Courts of Appeal," etc., the appeal or writ of error which may be taken " from the existing Circuit Courts direct to the Supreme Court," " in any case in which the jurisdiction of the court is in issue," can be

·taken only after final judgment; when the party against whom it is rendered must elect whether he will take his writ of error or appeal to this court upon the question of jurisdiction alone, or to the Circuit Court of Appeals upon the whole case.

THE case is stated in the opinion.

*Mr. W. O. Davis* and *Mr. W. Hallett Phillips* for plaintiff in error.

*Mr. W. O. Ledbetter* for defendants in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was a suit brought in the United States Court for the Indian Territory, Third Judicial Division, by A. B. Roff and W. R. Watkins against Richard McLish, for the recovery of about 640 acres of land situated in the Chickasaw Nation, and belonging to said tribe. In their amended complaint, they alleged that the defendant, Richard McLish, is a member of the tribe of Chickasaw Indians by blood; that both plaintiffs, Roff and Watkins, were born in the United States, and are now, and always have been, citizens of the United States, neither of them ever having renounced their allegiance to the government of the United States, nor taken the oath of allegiance to the government known as the Chickasaw government. The complaint further alleged that both plaintiffs, Roff and Watkins, are members and citizens of the Chickasaw tribe of Indians by intermarriage, and not by nativity or adoption; that, on the 15th day of November, 1865, the plaintiff Watkins, by intermarriage with Elizabeth Tyson, a member of said tribe by blood, became himself a member of said tribe, and that the plaintiff Roff also became a member of the same tribe by intermarriage with Matilda Bourland, the daughter of an adopted member of the tribe, during the year 1867; that, as such citizens of the Chickasaw nation, the plaintiffs had the right to own and did own, on or about the 1st of September, 1888, as tenants in common, the tract of land described in the complaint, and were in the actual possession thereof, but that on that day the defendant McLish entered upon the

said premises and unlawfully ousted the plaintiffs therefrom; and that he unlawfully withholds the same, and has continuously done so up to the time of bringing this suit, to the damage of the plaintiffs, $10,000. They pray for the recovery of the said premises, with the rents, damages and costs; or, if the court holds that they are not entitled to the recovery of the land, that they recover the value of the improvements put thereon, which improvements are set forth in some detail in the complaint, amounting in value, in the aggregate, to $2875.00 by Roff, and to $2200.00 by Watkins.

At October term, 1890, the defendant filed his demurrer to the jurisdiction of the court on these grounds:

(1) It appears from plaintiffs' amended complaint that the parties plaintiff and defendant are citizens of the Chickasaw nation or tribe of Indians, and that the court is without jurisdiction over the parties to this suit, and of this the defendant prays the judgment of the court whether he ought to answer said complaint.

(2) It appears from the amended complaint that plaintiffs acquired their pretended rights as citizens of the Chickasaw nation, and that they claim such rights, because of their said citizenship; and that this is a controversy between citizens of the Chickasaw tribe of Indians, of which the courts of said tribe have exclusive jurisdiction, and of this the defendant prays a judgment of the court that this suit be dismissed.

The demurrer was overruled by the court upon the ground that it had jurisdiction to hear and determine the cause, to which the defendant excepted. The defendant thereupon insisted that the jurisdiction of the court over the suit was at issue, and desiring to remove the cause by writ of error to the Supreme Court of the United States for its decision upon the question of jurisdiction involved, requested the court below to certify the question of jurisdiction involved to that court for review, offering to file a petition for a writ of error, with good and approved security, and asked that the court proceed no further with the cause until the jurisdiction should be decided by the Supreme Court of the United States. The court denied said request and held that it was its duty to proceed with the

trial of the case, notwithstanding the question of jurisdiction, and that the defendant could only appeal upon that question (of jurisdiction) to the Supreme Court of the United States from the final judgment of the court below; and required the defendant to proceed with the trial of the cause upon the merits: to all of which the defendant excepted, tendering his bill of exceptions, and asking that the same be allowed and certified, which was done by the judge of said court. He then sued out a writ of error from this court.

The writ of error is taken under the act of March 3, 1891, 26 Stat. 826, c. 517, which, as we have decided in *In re Claasen*, 140 U. S. 200, went immediately into effect on its enactment. The 13th section of that act placed the United States court in the Indian Territory on the same footing with regard to writs of error and appeals to this court as that occupied by the Circuit and District Courts of the United States.

Sec. 5 of the same act provides:

"That appeals or writs of error may be taken from the district courts or from the existing circuit courts direct to the Supreme Court in the following cases: *In any case* in which the jurisdiction of the court *is in issue; in such cases the question of jurisdiction alone* shall be certified to the Supreme Court from the court below for decision."

Does this provision authorize an appeal or writ of error to be taken to this court for review of a question involving the jurisdiction of the court below, whenever it arises in the progress of a case pending therein; and does the taking of such appeal or writ of error operate to stay the further proceedings in the cause until the determination by this court of the jurisdictional question? Or, in other words, has this court jurisdiction to review the question before any final judgment in the cause?

The plaintiff in error contends that we have the jurisdiction to review such question, because (1) there is in the section above quoted no express requirement of finality of judgment; and (2) because there is a positive requirement that the question of jurisdiction shall alone be certified to the Supreme Court from the court below for decision.

It is further argued that the omission of the word *final* in this particular provision, and the repeated use of that word in other sections of the act, in reference to a different class of cases, show the intent of the act to be that the review of the question of jurisdiction should not await the final determination of the case in the court below.

We think that upon sound principles of construction such is not the meaning of the act of Congress under consideration. It is manifest that the words in sec. 5, "appeals or writs of error," must be understood within the meaning of those terms as used in all prior acts of Congress relating to the appellate powers of this court, and in the long standing rules of practice and procedure in the Federal courts. Taken in that sense, those terms mean the proceedings by which a cause, in which there has been a final judgment, is removed from a court below to an appellate court for review, reversal or affirmance. It is true that the Judiciary Act of 1789 limited the appellate jurisdiction of this court to final judgments and decrees, in the cases specified. This, however, in respect to writs of error was only declaratory of a well settled and ancient rule of English practice. At common law no writ of error could be brought except on a final judgment. Bac. Ab. Error, A. 2. "If the writ of error be returnable before judgment is given, it may be quashed on motion." 2 Tidd's Practice, 1162. In respect to appeals there is a difference in the practice of the English chancery courts, in which appeals may be taken from an interlocutory order of the Chancellor to the House of Lords, and the practice of the United States chancery courts, where the right of appeal is by statute restricted to final decrees, so that a case cannot be brought to this court in fragments.

From the very foundation of our judicial system the object and policy of the acts of Congress in relation to appeals and writs of error, (with the single exception of a provision in the act of 1875 in relation to cases of removal, which was repealed by the act of 1887,) have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single

appeal. *Forgay* v. *Conrad*, 6 How. 201, 204. The construction contended for would render the act under consideration inconsistent with this long established object and policy. More than this, it would defeat the very object for which that act was passed.

It is a matter of public history, and is manifest on the face of that act, that its primary object was to facilitate the prompt disposition of cases in the Supreme Court, and to relieve it of the enormous overburden of suits and cases resulting from the rapid growth of the country and the steady increase of its litigations. That act, in substance, creates a new and distinct Circuit Court of Appeals, in each circuit, to be composed of three judges, namely, the circuit justice when present, and two circuit judges, and also, in the absence of any one of those three, a district judge selected by assignment for the purpose of completing the court.

It then provides for the distribution of the entire appellate jurisdiction of our national judicial system, between the Supreme Court of the United States and the Circuit Court of Appeals, therein established, by designating the classes of cases in respect of which each of those two courts shall respectively have final jurisdiction. But as to the mode and manner in which these revisory powers may be invoked, there is, we think, no provision in the act which can be construed into so radical a change in all the existing statutes and settled rules of practice and procedure of Federal courts as to extend the jurisdiction of the Supreme Court to the review of jurisdictional cases in advance of the final judgments upon them.

But there is an additional reason why the omission of the word *final*, in the 5th section of the act should not be held to imply that the purpose of the act is to extend the right of appeal to any question of jurisdiction, in advance of the final judgment, at any time it may arise in the progress of the cause in the court below. Such implication, if tenable, cannot be restricted to questions of jurisdiction alone. It applies equally to cases that involve the construction or application of the Constitution of the United States; and to cases in which the constitutionality of any law of the United States, or the

validity or construction of any treaty made under its authority, is drawn in question; and to those in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States. Under such a construction all these most important classes of cases could be directly taken by writ of error or appeal, as the case may be, to this court, independently of any final judgment upon them. The effect of such a construction, if sanctioned, would subject this court to the needless delays and labor of several successive appeals in the same case, which, with all the matters in controversy in it, by awaiting the final judgment, could be promptly decided in one appeal.

It is also insisted that sec. 14 of the act in question, repealing sec. 691 of the Revised Statutes and sec. 3 of the act of February 16, 1875, gives a wider scope to the revisory powers of this court, and makes a final judgment unnecessary to the exercise of these powers in the cases specified in said fifth section. We think that that repeal applies, in both sections mentioned, only to the provisions which limit the appellate power of the Supreme Court to cases involving the amounts there respectively specified, namely, $2000 in one and $5000 in the other. If it was the purpose of the act to repeal that part of those sections which refers to final judgments, such intention would have been indicated in express and explicit terms, inasmuch as there were, when the act was passed, other sections and other statutes containing the same limitation of appeals to final judgments.

It is further argued, in support of the contention of the plaintiff in error, that if it should be held that a writ of error would not lie upon a question of jurisdiction until after final judgment, such ruling would lead to confusion and absurd consequences; that the question of jurisdiction would be certified to this court, while the case on its merits would be certified to the Circuit Court of Appeals; that the case would be before two separate appellate courts at one and the same time; and that the Supreme Court might dismiss the suit upon the question of jurisdiction while the Circuit Court of Appeals might properly affirm the judgment of the lower court upon the

merits. The fallacy which underlies this argument is the assumption that the act of 1891 contemplates several separate appeals in the same case and at the same time to two appellate courts. No such provision can be found in the act, either in express terms or by implication. The true purpose of the act, as gathered from its context, is that the writ of error, or the appeal, may be taken only after final judgment, except in the cases specified in section 7 of the act. When that judgment is rendered, the party against whom it is rendered must elect whether he will take his writ of error or appeal to the Supreme Court upon the question of jurisdiction alone, or to the Circuit Court of Appeals upon the whole case; if the latter, then the Circuit Court of Appeals may, if it deem proper, certify the question of jurisdiction to this court.

The writ of error is

*Dismissed.*