UNITED STATES of America

v.

**David Lee KELSO.**

**Crim. No. 84–AR–104–NE.**

United States District Court,
N.D. Alabama.

Nov. 19, 1986.

George C. Lucas, Birmingham, Ala., for defendant.

Frank W. Donaldson, Bill L. Barnett, Birmingham, Ala., Craig Shaffer and Barbara Kammerman, U.S. Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM OPINION

ACKER, District Judge.

Pursuant to the Memorandum Opinion and Order entered by this court on November 7, 1986, in *United States v. Tucker, et al.*, 646 F.Supp. 1543 (N.D.Ala.1986), *United States v. Kelso* was called for trial on November 13, 1986, upon the heels of the trial of *United States v. Creekmore*, in which the United States, at the hands of the jury, obtained a conviction of Creekmore for conspiracy to violate 18 U.S.C. § 245(b)(2)(B). When called upon to prosecute Kelso, the Government reiterated its refusal to prosecute as already set forth in the notice it filed on November 12, 1986, in which it asserts that its "appeal taken in the Kelso case, as in the companion cases, is necessary to assure the Government's ability to make its case."

■ If the single item which this court suppressed on October 17, 1986, on Kelso's motion, in *United States v. Mason, et al.*, 646 F.Supp. 843 (N.D.Ala.1986), is "necessary to assure the Government's ability to make its case," how did the Government manage to "make its case" against Creekmore? Not only does the United States in its prosecution of Kelso have available to it all of the evidence which it offered against Creekmore, but it has available the self-incriminatory testimony which Kelso himself gave in *State v. Robinson*. The suppression of Kelso's 1979 civil deposition in no way involves any "use immunity" which would preclude the introduction against Kelso of any and all of the evidence which the Government offered against Creekmore. Therefore, the assertion by the Government that Kelso's 1979 deposition in *Kelso v. Robinson* is necessary "to make its case" is either the ultimate in hyperbole or is a disingenuous attempt to circumvent Kelso's right to a speedy trial while awaiting the appellate outcome of collateral issues.

In addition to pointing out the Government's failure to prosecute after warning by the court, Kelso moves to dismiss the indictment by raising a question akin to his earlier complaint that the Government violated Rule 16, F.R.Cr.P., by failing for years to furnish him a copy of his 1979 deposition in *Kelso v. Robinson*. This issue involves the failure of the Government to furnish to Kelso the name of Jerry Smith as an unindicted co-conspirator. This is a serious question, deserving of the court's careful evaluation.

On or about June 6, 1984, defendants Godfrey, Steele and Riccio moved, *inter alia*, to require the United States to disclose:

18. The names and addresses of the alleged unindicted co-conspirators described in Count One of the indictment as

"other persons known and unknown to the grand jury."

On June 26, 1984, before any order was entered by the magistrate or by the court in response to the said motions, the United States, in apparent acknowledgement of an obligation to do so, filed a bill of particulars which stated, *inter alia:*

In response to the defendants' motions for bill of particulars, the United States submits the following bill of particulars:

1. Count One of the Indictment alleges that each of the defendants conspired with each other and with persons known and unknown to the grand jury to violate Title 18, United States Code, Sections 245(b)(2)(B). Persons known to the Grand Jury known to have conspired with the defendants as charged in Count One but who were not named as defendants are: Jack Mize, Tony Anderson, Kenneth Traylor, Tim Arnold, Alan Anderton, Wayne Bushong, James Gwin, Lloyd Letson, Johnny Reyer, Larry Sandlin, Cattenia Lamar, James Smith, Greg Stinson, Bertis Kilgo, Edna Davis, Ann Shaffer, Welsh Shaffer, Jerry Camar, and Wilburn Wynn.

On July 19, 1984, Magistrate Reddoch denied Godfrey's motion in certain respects but granted the motion as to the requested identification of the unindicted co-conspirators. From July 19, 1984, until the present moment the Government has neither supplemented nor amended its bill of particulars to identify any additional unindicted co-conspirators.

During the Creekmore trial testimony was given tending to prove that some, if not all, of the persons named on June 26, 1986, as unindicted co-conspirators, were, in fact, members of the conspiracy alleged in Count One of the indictment. From June 26, 1984, until November 13, 1986, Kelso's counsel could have interviewed any one of these identified unindicted co-conspirators for the purpose of finding out what his testimony might be and whether or not it might be helpful in Kelso's de-

fense. This was not true of Jerry Smith because he was not so identified.

■ During the Creekmore trial, it became painfully obvious that Jerry Smith was a Klansman actually at the scene of the parade held in Decatur on May 26, 1979, and that he there emptied his revolver in the direction of the SCLC marchers from the back of his pickup truck. It also became obvious that the Government knew of Jerry Smith's role in the incident. The Government had in its possession a photograph of Jerry Smith in the act of firing his pistol, and Jerry Smith was actually identified by Officer Mickle, a Decatur policeman who testified against Creekmore. From the evidence offered against Creekmore, it is clear that Jerry Smith, with his pistol, was at least as much a co-conspirator as Creekmore was with the sticks in his hands. The Government, of course, has the right of selective prosecution within limits, and it may have had a valid reason for not seeking an indictment against Jerry Smith. This, of course, is also true as to the identified unindicted co-conspirators. The question remains: Can the United States not only decide not to indict a known co-conspirator but fail to disclose that known co-conspirator to an *indicted* co-conspirator after being ordered to do so? If the Government was under an obligation to identify all known unindicted co-conspirators on June 26, 1984, when it identified nineteen of them, that obligation was a continuing obligation and an obligation which ran in favor of Kelso as well as the other defendants, after this court allowed each defendant to adopt the motions of the other defendants. Kelso's counsel has particular reason to be sensitive, and even cynical, where the Government's failures to disclose are concerned, having already experienced the Government's unexplainable failure to disclose to him his client's 1979 deposition in *Kelso v. Robinson* until shortly before trial. But the court is not here dealing with a question of whether or not Kelso's counsel has a reason for chagrin but whether or not the Government's failure to disclose the identify of Jerry Smith as an unindicted co-conspirator constitutes

an alternative or additional ground for dismissing the indictment as against Kelso. Is it an appropriate sanction?

In *United States v. Burkhalter,* 735 F.2d 1327 (11th Cir.1984), the existence of two unindicted co-conspirators was discovered by the Government the weekend before trial and revealed to the defendant on the morning of trial. The court there gave the Government the option of employing the testimony of the newly discovered co-conspirators as witnesses, or to characterize them as co-conspirators, but not both. When the Government refused to elect, the court suppressed the prospective testimony, whereupon the Government appealed and the trial was continued. The Eleventh Circuit reversed, holding that a continuance would have been the appropriate remedy. *Kelso* is clearly distinguishable from *Burkhalter* in at least two crucial respects. Burkhalter expressly waived his right to a speedy trial, whereas here Kelso demands an immediate trial after having waited since May of 1984, when he was indicted. In *Burkhalter,* the Government only learned that the two persons were co-conspirators shortly before trial and *immediately* revealed them to defense counsel, whereas in *Kelso,* the Government knew of Jerry Smith's involvement in the events from the time of the indictment until the present time and has not yet revealed it to Kelso except accidentally by proof offered during the Creekmore trial. Kelso's counsel apparently found out about Jerry Smith from hearsay sources. While these are crucial distinctions between *Burkhalter* and *Kelso,* there is also a similarity, namely, that in both cases an appeal by the Government was taken from an order of suppression which, if the Government was successful, would delay trial long enough to give defendant an opportunity to ameliorate any prejudice occasioned by the Government's failure to reveal the co-conspirator's identity. However, there are several defects in an argument based on the self-correction which took place in *Burkhalter.* First, to ignore the Government's failure to identify Jerry Smith because of the Government's current appeal

from the order of suppression, and the Government's prospective appeal from the order dismissing the indictment against Kelso, would allow it to bootstrap itself over its own shortcomings and to excuse its own violations of the rules of discovery and of the orders of this court. Second, the order of suppression which has been appealed in *Kelso,* is now only incidental to the order dismissing the indictment. Third, in *Burkhalter* there had been no pattern of intransigence or prior discovery violations by the Government, and no prior pointed admonitions by the court, whereas here the Government had more than one strong warning about non-compliance with the discovery rules before this falling of the final ax.

The Fifth Circuit, in *United States v. Barrentine,* 591 F.2d 1069 (5th Cir.1979), pointedly said:

The granting of a bill of particulars is another of the rulings that is within the discretion of the trial judge. *Wong Tai v. United States,* 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). Professor Wright has observed that 'for practical purposes the trial court's exercise of discretion is almost invariably final.' 1 C. Wright, *Federal Practice and Procedure,* § 130, at 296 (1969). *See also Tillman v. United States,* 406 F.2d 930, 939 (5th Cir.), *vacation on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969).

Not only did Magistrate Reddoch properly exercise his discretion to order the disclosure of the known unindicted co-conspirators, but the Government purported to comply with the order, if only temporarily.

The Fifth Circuit proceeded in *Barrentine* to say:

A bill of particulars is a proper procedure for discovering the names of unindicted coconspirators who the government plans to use as witnesses. It is not uncommon for the trial judge to require the government to disclose their names when information is necessary in a defendant's preparation for trial. *Will v. United States,* 389 U.S. 90, 99, 88 S.Ct.

269, 19 L.Ed.2d 305 (1967). *The trial court's response to the government's clearly improper failure to comply with such a requirement poses the precise question that now confronts us.* 591 F.2d at 1077. (emphasis supplied).

In *Kelso,* the Government first argues that it had no plan to use Jerry Smith as a witness and therefore was not required to identify him. This is a specious argument for at least two reasons. First, the request did not ask for the names of the unindicted co-conspirators *who would be used as witnesses.* Rather, it expressly asked for the "names and addresses of the alleged unindicted co-conspirators." The Government's response contained no language to indicate that the nineteen persons it did identify constituted only those unindicted co-conspirators whom the Government might call as witnesses. In fact, of the nineteen listed in the bill of particulars the Government only called four as witnesses at the Creekmore trial. This means, of course, that the Government must have known that its list was not limited to those unindicted co-conspirators it actually intended to call as witnesses.

*Barrentine* cites *Will v. United States,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), which is perhaps the seminal case on several issues which the court must here address. There the Supreme Court stated several propositions applicable in *Kelso:*

All our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court. See, e.g., Judiciary Act of 1789, §§ 21, 22, 25, 1 Stat. 73, 83, 84, 85; *Cobbledick v. United States,* 309 U.S. 323, 326, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940); *McLish v. Roff,* 141 U.S. 661, 12 S.Ct. 118, 35 L.Ed. 893 (1891). *This general policy against piecemeal appeals takes on added weight in criminal cases, where the defendant is entitled to a speedy resolution of the charges against him. DiBella v. United*

*States,* 369 U.S. 121, 126, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962). Moreover, '*in the federal jurisprudence, at least, appeals by the Government in criminal cases are something unusual, exceptional, not favored.' Carroll v. United States,* 354 U.S. 394, 400, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957), at least in part because they always threaten to offend the policies behind the double-jeopardy prohibition, cf. *Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). Government appeal in the federal courts has thus been limited by Congress to narrow categories of orders terminating the prosecution, see 18 U.S.C. § 3731, and the Criminal Appeals Act is strictly construed against the Government's right of appeal, *Carroll v. United States,* 354 U.S. 394, 399–400, 77 S.Ct. 1332, 1335–1336 [1 L.Ed.2d 1442] (1957).

88 S.Ct. at 274. (emphasis supplied).

In *Will,* the United States had sought a writ of mandamus against Honorable Hubert L. Will to prohibit his requiring the Government to disclose to a defendant the names of persons in certain categories. The Supreme Court said:

... as petitioner stated in the opinion accompanying his original order to the Government to file a bill of particulars:

*"The reason for requiring disclosure of their names ... is not that they will or may be witnesses, but that the defendant requires identification of the times, places and persons present in order to prepare his defense."*

88 S.Ct. at 276. (emphasis supplied).

This court notes that the required disclosure in *Will,* as in the instant case, was of persons in a particular category, and was not limited to those persons who "will or may be witnesses." The only reason for requiring this identification was so that the defense could be prepared. The Supreme Court recognized discretion in the trial judge to require such disclosure and found error by the Court of Appeals when it interfered with the criminal trial process

and with the exercise of the trial judge's discretion.

If this court, on October 17, 1986, had known about the Government's failure to identify Jerry Smith, as well as its failure to disclose the 1979 deposition in *Kelso v. Robinson,* the court, in an exercise of its discretion under Rule 16, F.R.CR.P., might have dismissed the indictment against Kelso as an appropriate sanction instead of simply suppressing the 1979 deposition. This would have been the ultimate prophylaxis. Where the indictment was delayed for five years after the alleged criminal acts occurred, during which time important witnesses became unavailable, there is a stronger reason for demanding strict compliance with the rules of discovery. Even if the Government did not deliberately seek strategic advantage from the lengthy delay, the time lapse certainly enhanced the Government's obligation to play fair after it obtained the indictment.

While it is impossible without a trial to know precisely what prejudice would result from the non-disclosure of Jerry Smith as a co-conspirator, the court has no hesitancy in stating the obvious, namely, that with the statute of limitations having run Jerry Smith would be free to "take the blame" if he should choose to do so, that is, except for exposing himself to a charge of perjury. More importantly, the defense tactic of pointing out to the jury that a Klansman who actually fired a gun was *not* indicted, whereas a man who was actually shot by a gun *was* indicted, is lost unless Kelso finds out about Jerry Smith. This foreclosed forensic opportunity may explain the Government's failure to identify Jerry Smith. It certainly does not excuse it. To hide from a defendant the factual basis for a persuasive jury argument is excused except where it is in clear violation of a discovery order, as here.

■ The Fifth Circuit, speaking through a panel which included now Chief Judge Roney of the Eleventh Circuit, in *United States v. Mackey,* 551 F.2d 967 (5th Cir. 1977), deals specifically with the range of discretion in a trial court to grant a bill of particulars. That court said:

The purposes of a bill of particulars are to obviate surprise at trial, enable the defendant to prepare his defense with full knowledge of the charges against him, and to enable double jeopardy to be pled in case of a subsequent prosecution. *United States v. Martinez,* 466 F.2d 679 (5th Cir.1972), *cert. denied,* 414 U.S. 1065, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). Informing the defendant of the names of alleged unindicted co-conspirators has been held a proper use of a bill of particulars. *United States v. Dioguardi,* 332 F.Supp. 7 (S.D.N.Y.1971); *United States v. Rosenstein,* 303 F.Supp. 210 (S.D.N.Y. 1969); *cf., United States v. White,* 50 F.R.D. 70 (N.D.Ga.1970), *aff'd,* 450 F.2d 264 (5th Cir.1971), *cert. denied,* 405 U.S. 1072, 92 S.Ct. 1523, 31 L.Ed.2d 805 (1972).

The granting of a bill of particulars is addressed to the sound discretion of the trial court, *Wong Tai v. United States,* 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927), and the exercise of this discretion cannot be reversed on appeal unless the court concludes that the "defendant was actually surprised at the trial and thus that substantial rights of his were prejudiced by the denial." 1 C. Wright, Federal Practice & Procedure, § 130 at 295 (1969); *United States v. Bearden,* 423 F.2d 805 (5th Cir.), *cert. denied,* 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1970). Professor Wright continues by observing "for practical purposes the trial court's exercise of discretion is almost invariably final." 1 C. Wright, *suprs,* at 296; *see also Tillman v. United States,* 406 F.2d 930, 939 (5th Cir.), *vacation on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). The determination of whether to impose a specific sanction for violation of its own orders is even more surely within the discretion of the ordinary court. The magistrate, acting pursuant to the authority of the district court, made an order in this case requiring the government to disclose the names of these unin-

dicted coconspirators. The government failed to comply with that order. The defendants asked that the trial court impose the sanction of excluding their testimony from consideration by the jury. However in support of this request defendants advanced only a general assertion that if the names to be furnished had been revealed, these potential witnesses might have been contacted before their testimony was adduced. The court refused to deprive the jury of the benefit of this testimony because defendants could not even suggest any specific prejudice that had resulted from the failure to disclose the names of these persons. This being so, we cannot say that the court abused its discretion in allowing the unnamed persons to testify.

We determine solely the question of whether the trial court abused its discretion in the ruling presented here. *We do not undertake to delineate the ambit of a district court's discretion to impose some other sanction if faced with a similar procedural default or this sanction where prejudice is shown.*

551 F.2d at 970. (emphasis supplied).

It is obvious from this articulation of the principles here in play that the decision as to what sanction is appropriate for the prosecution's failure to provide the particulars ordered by the trial court is for the trial court. Here, the prosecution shows no remorse for its failure to identify Jerry Smith and instead contends that it had and still has no obligation to identify any coconspirators except those it decides to identify. While it perhaps would not constitute an abuse of discretion for this court to fashion a sanction less than dismissal of the indictment against Kelso, the court here chooses to exercise its discretion to impose the ultimate sanction of dismissal, particularly inasmuch as the court finds prejudice to have been caused, has previously warned the prosecution, and is simultaneously dismissing the indictment anyway for failure to prosecute.

The Government contends that this court's conclusion in its Opinion of Novem-

ber 7, 1986, that Kelso's 1979 deposition is only "frosting on the prosecution cake" is erroneous. The Government's failure to identify Jerry Smith as an unindicted coconspirator from the time of the indictment to the present may constitute "frosting on Kelso's motion-to-dismiss cake." Both frostings leave a bad taste. When the United States is unapologetic and apparently insists on its right to decide for itself which discovery rules and which orders it will obey, while it pursues interim appellate review of any and all adverse rulings despite Kelso's insistence on a speedy trial, the sanction of dismissal is not too severe. If the trial court lacks discretion to sanction the Government under these circumstances by a dismissal of its indictment, this case will become the vehicle for removing such discretion from the trial court, that is unless the dismissal for this additional reason is a redundancy.

A separate, appropriate order will be entered.