839 F.2d 69
 1988-1 Trade Cases 67,902
 VOLVO NORTH AMERICA CORPORATION, International Merchandising
Corporation and Pro-Serv, Inc., Plaintiffs-Appellants,
v.
MEN'S INTERNATIONAL PROFESSIONAL TENNIS COUNCIL, M. Marshall
Happer, III and Philippe Chatrier, Defendants-Appellees.
MEN'S INTERNATIONAL PROFESSIONAL TENNIS COUNCIL and M.
Marshall Happer, III, Counterclaimants,
v.
VOLVO NORTH AMERICA CORPORATION, International Merchandising
Corporation and Pro-Serv, Inc., Counterclaim-Defendants,
and
Donald L. Dell, Raymond S. Benton, Dell, Benton & Falk, Mark
H. McCormack, International Merchandising Group,
International Management Inc., Transworld International
Inc., and A.B. Volvo, Additional Counterclaim-Defendants.
 Dockets 87-7776, 87-7778 and 87-7784.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 20, 1987.
Decided Feb. 8, 1988.
 
 Roy L. Reardon, New York City, (Simpson Thacher & Bartlett, Mary Elizabeth McGarry, New York City, of counsel), for defendants-appellees.
 James J. Maloney, New York City (Rogers & Wells, Michael F. Coyne, Donald P. Alexander, Nancy A. Brown, James C. Oschal, New York City, of counsel), for plaintiff-appellant Volvo North America Corp.
 Lloyd I. Isler, P.C., New York City, for plaintiff-appellant Intern. Merchandising Corp.
 Robert S. Litt, Washington, D.C. (Williams & Connolly, Mark S. Levinstein, William R. Murray, Jr., Washington, D.C., of counsel), for plaintiff-appellant Pro-Serv, Inc.
 Before OAKES, CARDAMONE, and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Defendants-appellees, Men's International Professional Tennis Council, M. Marshall Happer, III and Phillippe Chatrier (collectively "MIPTC"), move to dismiss the consolidated appeals of plaintiffs-appellants Volvo North America Corporation ("Volvo"), International Merchandising Corporation ("IMC") and ProServ, Inc. ("ProServ") for lack of jurisdiction over the appeals. The appeals were taken from a memorandum and order of the United States District Court, 678 F.Supp. 1035, for the Southern District of New York, Kevin Thomas Duffy, Judge, entered August 10, 1987, which dismissed, pursuant to Fed.R.Civ.P. 12(b)(6),[1] plaintiffs-appellants' thirteen count amended complaint alleging various antitrust violations injuring all plaintiffs-appellants, and various contractual and related violations injuring Volvo alone, and requesting damages and injunctive relief relating to various practices in which MIPTC allegedly engages with respect to its conduct and promotion of the Grand Prix Circuit ("Grand Prix"), a series of men's professional tennis tournaments.
 
 
 2
 Specifically, counts one through seven and thirteen were dismissed without leave to replead, and are those primarily at issue on this appeal. The action below remains open pending the determination of counterclaims (as well, of course, as any of counts eight through twelve of the dismissed complaint that may be repleaded). Judge Duffy declined to enter any final judgment pursuant to Fed.R.Civ.P. 54(b), so appellate jurisdiction will not lie under 28 U.S.C. Sec. 1291 (1982). MIPTC contends that the dismissal of the amended complaint does not constitute the refusal of an injunction, and thus that there is also no jurisdiction over the appeals under 28 U.S.C. Sec. 1292(a)(1) (1982), which provides for immediate appeal of interlocutory orders that grant, continue, modify, refuse or dissolve injunctions, or refuse to dissolve or modify them.
 
 
 3
 We grant the motion to dismiss the appeal as to counts eight through twelve, which were dismissed with leave to replead, as well as count thirteen, which does not seek injunctive relief, and deny the motion as to counts one through seven, which seek injunctive relief and were dismissed without leave to replead.
 
 Background
 
 4
 This case stems from a dispute between MIPTC, an unincorporated association that, since 1974, has organized and overseen the Grand Prix, and Volvo, which from 1980 through 1984 was the overall sponsor of the Grand Prix. In February, 1984, following contract bids, the MIPTC named Nabisco Brands, Inc. as the 1985 Grand Prix sponsor. Volvo then entered into an agreement with MIPTC (the "Agreement") whereby Volvo assigned its then existing contracts with NBC and Madison Square Garden to MIPTC in exchange for subsidiary sponsorship of several individual Grand Prix events, and Volvo and MIPTC agreed to cooperate with each other's reasonable promotional activities.
 
 
 5
 In April, 1985, however, Volvo filed suit against MIPTC over the discontinued sponsorship and subsequent arrangements. In September, 1985, IMC and Pro-Serv, which engage both in the representation of male professional tennis players and the production of men's professional tennis events, were allowed to intervene over the objections of MIPTC, and plaintiffs-appellants were granted leave to file the amended complaint whose dismissal is the subject of this appeal.
 
 
 6
 Counts one through five of the amended complaint allege various violations of federal antitrust statutes by MIPTC injuring all plaintiffs. The gravaman of the antitrust allegations is that MIPTC controls access to the major men's professional tournaments, and has used this control to impose restrictions upon male professional tennis players which hamper the ability of actual and potential competitors of MIPTC to conduct competing tennis events. Count six alleges interference with prospective business relationships, and count seven unfair competition, again injuring all plaintiffs. Treble damages are sought with respect to counts one through five, compensatory and punitive damages are sought with respect to counts six and seven, and declaratory and extensive injunctive relief are sought with respect to all seven counts.
 
 
 7
 Counts eight through thirteen are alleged only by Volvo, and assert breach of contract (counts eight and ten), fraud (counts nine and eleven), defamation (count twelve) and product disparagement (count thirteen). Damages are sought with respect to all these counts, as well as limited injunctive relief under counts ten and eleven relating to alleged breaches of the Agreement by MIPTC and related matters.
 
 
 8
 MIPTC moved to dismiss the amended complaint, and the district court granted that motion by a memorandum and order filed August 10, 1987. Leave to replead was denied with respect to counts one through seven and thirteen, but granted with respect to counts eight through twelve.
 
 
 9
 Plaintiffs-appellants filed appeals from the order of dismissal on September 8 and 9, 1987. Shortly thereafter, the district court declined to enter any final judgment pursuant to Fed.R.Civ.P. 54(b).[2] MIPTC now moves to dismiss the appeals, claiming that this court lacks jurisdiction over the appeals because they are not taken from a final order pursuant to 28 U.S.C. Sec. 1291 (1982), and also do not qualify under 28 U.S.C. Sec. 1292(a)(1) (1982), which provides for the immediate appeal of interlocutory orders that grant, continue, modify, refuse or dissolve injunctions, or refuse to dissolve or modify them. Plaintiffs-appellants contend that the order dismissing the claims is appealable as of right under 28 U.S.C. Sec. 1292(a)(1) (1982) because it refuses an injunction within the meaning of that provision.
 
 Discussion
 
 10
 In determining whether this court has jurisdiction over these appeals, we must begin with the statutory provision at issue. 28 U.S.C. Sec. 1292(a)(1) (1982) states in pertinent part:
 
 Sec. 1292. Interlocutory decisions
 
 11
 (a) ... [T]he courts of appeals shall have jurisdiction of appeals from:
 
 
 12
 (1) Interlocutory orders of the district courts of the United States, ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions ...
 
 
 13
 This statute provides an exception to the longstanding rule, codified in 28 U.S.C. Sec. 1291 (1982), that appeals should generally be taken only from a final judgment of a district court. The policy underlying this rule was stated by the Supreme Court in McLish v. Roff, 141 U.S. 661, 12 S.Ct. 118, 35 L.Ed. 893 (1891):
 
 
 14
 From the very foundation of our judicial system the object and policy of the acts of Congress in relation to appeals and writs of error ... have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.
 
 
 15
 Id. at 665-66, 12 S.Ct. at 120 (citation omitted). See also Stringfellow v. Concerned Neighbors In Action, --- U.S. ----, ----, 107 S.Ct. 1177, 1184, 94 L.Ed.2d 389 (1987).
 
 
 16
 The exception for certain appeals from interlocutory orders dealing with injunctions was first introduced in 1891, and has developed over the years into the present enactment codified in 28 U.S.C. Sec. 1292(a)(1) (1982). See generally Baltimore Contractors v. Bodinger, 348 U.S. 176, 180 & n. 6, 75 S.Ct. 249, 252 & n. 6, 99 L.Ed. 233 (1955) (discussing history of section 1292).
 
 
 17
 Plaintiffs-appellants contend that the present appeal falls squarely within the terms of section 1292(a)(1). MIPTC contends, on the contrary, that this section has been definitively construed in Carson v. American Brands, Inc., 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) (hereinafter "Carson "), so as to preclude appellate jurisdiction in the present case.
 
 
 18
 Before dealing with Carson, however, we must consider General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932) (hereinafter "General Electric "), which is very closely on point. In General Electric, a defendant in a patent infringement suit counterclaimed for patent infringement, seeking an injunction and accounting, and the counterclaim was dismissed on plaintiffs' motion for want of personal jurisdiction over the plaintiffs. Defendant appealed, successfully contending in both the Sixth Circuit Court of Appeals and the Supreme Court for the sensible result that plaintiffs could not, under the pertinent statutes and rule, simultaneously invoke the jurisdiction of the district court as plaintiffs and avoid personal jurisdiction as counterclaim defendants. Preliminarily, however, the Supreme Court had to deal with plaintiffs' claim that appellate jurisdiction was wanting under the terms of the substantially identical predecessor of 28 U.S.C. Sec. 1292(a)(1) (1982). It did so in the following terms:
 
 
 19
 [B]y their motion to dismiss, plaintiffs themselves brought on for hearing the very question that, among others, would have been presented to the court upon formal application for an interlocutory injunction. That is, whether the allegations of the answer are sufficient to constitute a cause of action for injunction. And the court necessarily decided that upon the facts alleged in the counterclaim defendants were not entitled to an injunction. It cannot be said, indeed plaintiffs do not claim, that the dismissal did not deny to defendants the protection of the injunction prayed in their answer.
 
 
 20
 General Electric, 287 U.S. at 433, 53 S.Ct. at 203.
 
 
 21
 In Carson, however, the Supreme Court, in reviewing a district court's order denying a motion to enter a consent decree which included injunctive provisions, announced this rule:
 
 
 22
 For an interlocutory order to be immediately appealable under Sec. 1292(a)(1), ... a litigant must show more than that the order has the practical effect of refusing an injunction.... Unless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.
 
 
 23
 Carson, 450 U.S. at 84, 101 S.Ct. at 996 (emphasis added) (quoting Baltimore Contractors v. Bodinger, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)).[3]
 
 
 24
 In reviewing the Supreme Court's prior precedents on this subject, the Carson court addressed General Electric as follows:
 
 
 25
 General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430 [53 S.Ct. 202, 77 L.Ed. 408] (1932), a case in which respondents sought to appeal the District Court's dismissal of their counterclaim for injunctive relief on jurisdictional grounds, concluded that the District Court's order did have a serious, perhaps irreparable, consequence and that it could not be effectually challenged unless an appeal were immediately taken. The Court noted that the District Court "necessarily decided that upon the facts alleged in the counterclaim defendants were not entitled to an injunction," id., at 433, 53 S.Ct., at 204, and that this decision resolved "the very question presented to the court upon formal application for an interlocutory injunction." Ibid.
 
 
 26
 Carson, 450 U.S. at 86 n. 11, 101 S.Ct. at 997, n. 11 (emphasis in original).
 
 
 27
 Plaintiffs-appellants contend that (1) Carson applies only with respect to interlocutory orders which have the "practical effect" of refusing an injunction, while the final dismissal here constitutes an explicit refusal of an injunction governed by General Electric, to which Carson is simply inapplicable; and in any event, (2) they have met the requirements of Carson because the district court's final dismissal of the antitrust counts of their complaint is of "serious, perhaps irreparable consequence" and can be "effectually challenged" only by immediate appeal.
 
 
 28
 MIPTC contends that (1) the rule stated in Carson applies to all interlocutory orders which refuse an injunction; (2) alternatively, the final dismissal here does not directly rule on an application for an injunction, and must therefore be tested under the "practical effect" rule of Carson requiring serious or irreparable consequences which can only be challenged by immediate appeal; and in either event, (3) plaintiffs-appellants have not satisfied the Carson test.
 
 
 29
 For the reasons hereinafter stated, we conclude that the ruling below did not explicitly refuse an injunction, and must therefore be tested under the Carson "practical effect" analysis,[4] but plaintiffs-appellants have succeeded in establishing that the dismissal from which they appeal is of "serious, perhaps, irreparable consequence" and can be "effectually challenged" only by immediate appeal.
 
 
 30
 Carson has spawned an array of circuit court opinions which have attempted to cope with its implications. The post-Carson cases in this circuit construing section 1292(a)(1) are not particularly helpful to the resolution of the issue which we must address. H & S Plumbing Supplies, Inc. v. BancAmerica Commercial Corp., 830 F.2d 4, 7 (2d Cir.1987), saw no irreparable consequences resulting from a refusal to cancel a lis pendens pending resolution of the underlying litigation. Korea Shipping Corp. v. New York Shipping Ass'n, 811 F.2d 124 (2d Cir.1987), held that an order requiring the continuation of payments to a pension benefit plan pending the adjudication of a party's continuing obligations respecting that plan had the "practical effect" of a preliminary injunction, but did not meet the Carson test for appellate jurisdiction. United States v. Caparros, 800 F.2d 23, 26 (2d Cir.1986), held that an interlocutory protective order precluding defendant from publicizing documents provided to him by the government threatened no irreparable harm warranting appellate jurisdiction.
 
 
 31
 General Motors Corp. v. Gibson Chemical & Oil Corp., 786 F.2d 105, 107-08 (2d Cir.1986), deemed the interlocutory grant of a preliminary injunction to plaintiff "which touches upon the merits of [plaintiff's] claim" immediately appealable, but deemed a seizure order not to meet the requirements of Carson. In Re Feit & Drexler, Inc., 760 F.2d 406, 411-13 (2d Cir.1985), held that an interlocutory order restraining a defendant from disposing of any of her property and directing delivery of all her property to her attorney in escrow pendente lite met the Carson test for immediate appeal. Bridge C.A.T. Scan Associates v. Technicare Corp., 710 F.2d 940 (2d Cir.1983), declined section 1292(a)(1) jurisdiction over an appeal from an interlocutory order regulating disclosure without citing Carson. New York v. Dairylea Coop, Inc., 698 F.2d 567 (2d Cir.1983), deemed an interlocutory appeal from a district court's refusal to sanction a proposed settlement agreement not to meet the requirements of Carson.
 
 
 32
 General Motors comes closest to our case, in its assertion that the grant of a preliminary injunction to plaintiff "which touches upon the merits of [plaintiff's] claim is, of course, reviewable." 786 F.2d at 108 (citation omitted). Some of the cases construing Carson have ruled that where an order directly addresses the merits, as Judge Duffy's order here surely did, an appeal may be taken without regard to considerations of irreparable harm. See e.g., Winterland Concessions Co. v. Trela, 735 F.2d 257, 261 (7th Cir.1984) (order dismissing counterclaims which sought injunctive relief appealable without consideration of irreparable harm); Center for Nat'l Sec. Studies v. C.I.A., 711 F.2d 409, 412 (D.C.Cir.1983) (order granting summary judgment as to count of complaint appealable without consideration of irreparable harm). See also Tokarcik v. Forest Hills School Dist., 665 F.2d 443, 447 (3d Cir.1981) (order granting summary judgment to plaintiff including injunctive relief "which went to the merits of the dispute" deemed appealable, but defendant's claim of irreparable harm considered). Cf. Center for Nat'l Sec. Studies v. C.I.A., 711 F.2d at 412-13 (stating rule that an order directly addressing merits is appealable without a showing of irreparable harm, but applying Carson requirements and denying jurisdiction because merits of only one of plaintiff's twelve claims were assessed below).
 
 
 33
 General Motors is not dispositive here, however, because that case involved a straightforward grant of a motion for a preliminary injunction, whereas here we have an order which does not respond to a specific application for injunctive relief, but rather grants summary judgment which has the "practical effect" of definitively denying the permanent injunctive relief sought by plaintiffs-appellants with respect to their antitrust claims (since leave to replead was denied as to those claims). A number of cases have stated that appeal under section 1292(a)(1) is more appropriate with respect to preliminary than to permanent injunctive relief. See, e.g., Woodard v. Sage, 818 F.2d 841, 851 (Fed.Cir.1987) (in banc) (denial of preliminary injunction cannot effectively be reviewed after trial, but denial of permanent injunction does not necessarily have this element of harm); Shanks v. Dallas, 752 F.2d 1092, 1097 & n. 6 (5th Cir.1985) (denial of permanent injunction usually carries a lesser threat of irreparable harm since full injunctive relief can be granted on appeal); Shirey v. Bensalem Township, 663 F.2d 472, 476 (3d Cir.1981) (primary use of section 1292(a)(1) has been for appellate review of decisions on preliminary injunctions).
 
 
 34
 We note also that some of the cases assert that a failure to pursue preliminary injunctive relief, as occurred here, militates against interlocutory appellate review. See, e.g., South Bend Consumers Club, Inc. v. United Consumers Club, Inc., 742 F.2d 392, 394 (7th Cir.1984); Shirey v. Bensalem Township, 663 F.2d 472, 476-77 (3d Cir.1981). But see Brown v. Kerr-McGee Chemical Corp., 767 F.2d 1234, 1240 (7th Cir.1985) (failure to seek preliminary injunctive relief held not to bar plaintiff from seeking appellate relief from interlocutory order granting partial summary judgment to defendant where preliminary relief impractical), cert. denied, 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986). Plaintiffs-appellants contend that the initiation of this litigation had the effect of deterring MIPTC from pursuing the activities which threatened harm to plaintiffs-appellants, so the necessary showing of imminent harm could not have been made in support of an application for a preliminary injunction. On this record, we cannot conclude that plaintiffs-appellants' failure to seek preliminary injunctive relief below should bar this appeal.
 
 
 35
 We thus return to the applicability of General Electric, and the impact of Carson on General Electric. In the first place, we would agree that since General Electric (and this appeal) did not involve the grant or denial of a motion specifically addressed to injunctive relief, it is a case where the "practical effect" of the order was to refuse an injunction within the meaning of Carson. Carson, 450 U.S. at 84, 101 S.Ct. at 996. See also Woodard v. Sage, 818 F.2d 841, 845 (Fed.Cir.1987) (in banc); Brown v. Kerr-McGee Chemical Corp., 767 F.2d 1234, 1237 (7th Cir.1985); In Re Flight Transp. Corp. Sec. Litig., 730 F.2d 1128, 1133 (8th Cir.1984), cert. denied, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); Center for Nat'l Sec. Studies v. C.I.A., 711 F.2d 409, 412 (D.C.Cir.1983). Thus, cases factually similar to General Electric, such as the instant appeal, would be subjected to the Carson requirements.
 
 
 36
 This is perhaps another way of arriving at the view expressed in Woodard v. Sage, 818 F.2d 841, 851 (Fed.Cir.1987) (in banc), that Carson "clarif[ied General Electric ] by stating a requirement that was met but not discussed" in General Electric. The precise terms of that clarification, however, are crucial to the resolution of the issue before this court. Carson stated that General Electric did in fact find irreparable harm resulting from an order that could not be effectually challenged unless immediate appeal was allowed, because:
 
 
 37
 The Court [in General Electric ] noted that the District Court "necessarily decided that upon the facts alleged in the counterclaim defendants were not entitled to an injunction," id. [i.e., 287 U.S.], at 433, 53 S.Ct., at 204, and that this decision "resolved the very question that, among others, would have been presented to the court upon formal application for an interlocutory injunction."[5]
 
 
 38
 Carson, 450 U.S. at 86 n. 11, 101 S.Ct. at 997 n. 11 (quoting General Electric ). See also Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 481, 98 S.Ct. 2451, 2454, 57 L.Ed.2d 364 (1978): "In [General Electric ] the Court held that an order dismissing a counterclaim for an injunction was appealable. The order, therefore, entirely disposed of the defendant's prayer for injunctive relief...."
 
 
 39
 So here. The dismissal of the antitrust counts of plaintiffs-appellants' amended complaint without leave to replead decided that, in Carson 's words (quoting General Electric ), "upon the facts alleged [in their amended complaint, plaintiffs-appellants] were not entitled to an injunction," and "resolved the very question that, among others, would have been presented to the court upon formal application for an interlocutory injunction." Or as Gardner put it, "[t]he order ... entirely disposed of the [plaintiffs-appellants'] prayer for injunctive relief." Accordingly, the irreparable harm which Carson found in General Electric is present here.
 
 
 40
 This conclusion is fortified by consideration of the affidavits which plaintiffs-appellants have submitted in opposition to this motion. Plaintiffs-appellants assert, inter alia, that MIPTC has refused to renew the sanction for a Chicago tournament which Volvo has conducted in the past, and has adopted new rules which preclude any tournament to be part of the Grand Prix if an entity which represents players owns, has an equity interest in, or manages the tournament. IMC and ProServ are thus situated, both representing male professional tennis players and owning, having an equity interest in or managing tennis tournaments.
 
 
 41
 In view of the pervasive influence of MIPTC over men's professional tennis tournaments, plaintiffs-appellants argue convincingly that if review of their dismissed antitrust claims is deferred until the conclusion of the potentially protracted litigation pending below, these restrictions are likely to have a serious and irreparable impact upon their ability to compete with MIPTC in the conduct of men's professional tennis tournaments, and that the order dismissing their antitrust claims can therefore be effectually challenged only by an immediate appeal. Not only, therefore, are the general standards articulated in General Electric and reiterated in Carson met here; there is also a persuasive showing of specific and irreparable harm which will result from a failure to exercise appellate jurisdiction at this juncture, which is likely to render ineffectual any relief that might result from an appeal from a final judgment in the litigation pending below.
 
 
 42
 We note that the decision below did not dispose of all of plaintiffs-appellants' claims for injunctive relief, since leave to replead was afforded as to counts ten and eleven, with respect to which Volvo (but not the other plaintiffs-appellants) sought relatively limited injunctive relief relating primarily to the Agreement. As in Build of Buffalo, Inc. v. Sedita, 441 F.2d 284 (2d Cir.1971), however, the severe limitation of the injunctive relief sought suffices for appellate jurisdiction. See Winterland Concessions Co. v. Trela, 735 F.2d 257, 261 (7th Cir.1984) (citing Build of Buffalo for this rule). Contrast Western Geophysical Co. v. Bolt, 440 F.2d 765, 771 (2d Cir.1971) (no appellate jurisdiction where partial summary judgment dismissed portion of a counterclaim, but equivalent injunctive relief available under remaining counterclaims).
 
 
 43
 In this connection, we do not believe that pendent appellate jurisdiction should be extended to the claims for injunctive relief stated with respect to counts ten and eleven, as to which leave to replead was granted,[6] in view of the disparity between Volvo's individual, essentially contractual claims stated in those counts and the broader antitrust claims stated by all plaintiffs-appellants in counts one through seven. Cf. United States v. Ianniello, 824 F.2d 203, 209 (2d Cir.1987) (pendent appellate jurisdiction appropriate where issues intertwined).
 
 
 44
 Finally, we note that the panel which hears this appeal on the merits may wish to consider the views concerning the scope of such appeals expressed in Cable Holdings of Battlefield, Inc. v. Cooke, 764 F.2d 1466, 1472 (11th Cir.1985).[7]
 
 Conclusion
 
 45
 The motion to dismiss the appeal is granted as to counts eight through thirteen of plaintiffs-appellants' amended complaint, and denied as to counts one through seven thereof.
 
 
 
 [1]
 The district court's memorandum and order from which this appeal is taken described the motion on which that court ruled at several places as one for summary judgment, but this appears to have been simply a misnomer for a Rule 12(b)(6) motion
 
 
 [2]
 A Rule 54(b) certification by Judge Duffy at this juncture would apparently be honored in this circuit, Gumer v. Shearson, Hammill & Co., 516 F.2d 283, 285 (2d Cir.1974); see also Leonhard v. United States, 633 F.2d 599, 609-11 (2d Cir.1980), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981), although this is not the universal rule. See, e.g., Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166, 1169 (5th Cir.1978); Oak Constr. Co. v. Huron Cement Co., 475 F.2d 1220, 1221 (6th Cir.1973) (per curiam). We do not mean to imply by this comment that a post-appeal request for Rule 54(b) certification is generally sound practice
 
 
 [3]
 The rule stated in Carson was recently reiterated by the Supreme Court, without significant elaboration, in Stringfellow v. Concerned Neighbors in Action, --- U.S. ----, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987), where an appeal from an order conditioning intervention was dismissed, applying the Carson criteria
 
 
 [4]
 It is therefore unnecessary to determine in this opinion whether Carson applies to all interlocutory orders which refuse an injunction
 
 
 [5]
 We note that the concluding portion of this Carson quotation from General Electric lends further support to our conclusion that a section 1292(a)(1) appeal should not be denied here because of plaintiffs-appellants' failure to seek preliminary injunctive relief below. In General Electric, as here, no application for preliminary injunctive relief had been made by the parties whose claim was dismissed on motion, but the Supreme Court simply observed that the same question was presented by the motion to dismiss that would have been presented had the counterclaimants moved for a preliminary injunction
 
 
 [6]
 An appropriate analogy may be provided by Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), which dismissed an appeal from an order which denied, because of unresolved issues of fact, a motion for summary judgment which sought injunctive relief "lest a floodgate be opened that brings into the exception [provided by section 1292(a)(1) ] many pretrial orders." Id. at 24-25, 87 S.Ct. at 194-195. Since the case is not before us, we intimate no view as to the appropriate rule where leave to replead is granted but the litigant elects to stand on his pleading. See Electronic Switching Indus., Inc. v. Faradyne Electronics Corp., 833 F.2d 418 (2d Cir.1987); Borelli v. Reading, 532 F.2d 950 (3d Cir.1976)
 
 
 [7]
 We also note Cable Holdings' admonition, 764 F.2d at 1472, that "we should not encourage the practice of appending perfunctory requests for injunctive relief to complaints as a device to secure immediate appeal of all orders," an admonition which we are confident this court would enforce in an appropriate case