**WINTERLAND CONCESSIONS COMPANY, et al., Plaintiffs-Appellees,**

v.

**Edwin S. TRELA, Jr.,
Defendant-Appellant.**

**No. 82–2229.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1983.

Decided May 17, 1984.

Ed Trela, pro se.

James D. Adducci, Schuyler, Roche & Zwirmer, P.C., Chicago, Ill., for plaintiffs-appellees.

Before CUDAHY, ESCHBACH and COFFEY, Circuit Judges.

ESCHBACH, Circuit Judge.

In this civil action, Winterland Concessions Company ("Winterland") sued Edwin Trela, a T-shirt manufacturer, alleging violations of the Lanham Act, the Illinois Deceptive Practices Act, and the common-law right of publicity. Trela counterclaimed, alleging that Winterland had violated the civil rights and antitrust laws. The district court granted Winterland's request for a preliminary injunction, 528 F.Supp. 1201, and dismissed Trela's counterclaims. It also refused to grant Trela's motion to vacate or modify the preliminary injunction. Trela appeals both of these interlocutory orders.

We affirm the district court's order refusing to vacate or modify the injunction. We also affirm the order dismissing Trela's civil rights counterclaim. Because we believe that Trela's counterclaim for violations of the antitrust laws states a cause of action, we reverse the district court's dismissal of that claim and remand for further proceedings.

## I.

Winterland manufactures, distributes, and retails T-shirts and jerseys bearing the names, likenesses, and logos of individual performers and musical groups with whom it has exclusive licensing arrangements. Although the company sells some shirts to stores, the majority of its sales are made at concerts given by its licensors. For this reason, Winterland has waged a continuing legal battle against T-shirt "bootleggers," who sell, outside the concert facilities, shirts bearing the performers' names and likenesses without authorization.

Edwin Trela operates a print shop which designs and sells specialty T-shirts. Many of Trela's shirts bear the names of Winterland's licensors. Trela also printed a line of shirts he called "Roc Rags," upon which he printed the performers' names, concert information, and advertisements.

On September 21, 1981, Winterland filed a complaint against various parties it claimed were involved in "bootlegging" activities. The complaint alleged violations of the Illinois Deceptive Practices Act, Ill. Rev.Stat. ch. 121½, § 312, the Lanham Act, 15 U.S.C. § 1121, and the common-law right of publicity. The complaint was twice amended to add additional defendants, and Trela was added as a defendant on November 2, 1981.

On November 5 and 6, a hearing was conducted to determine whether Trela should be preliminarily enjoined from producing shirts which allegedly infringed on Winterland's licensing agreements, and on November 12, an injunction was issued prohibiting Trela from manufacturing or selling any upper-body garments bearing the names, likenesses, or logos of Winterland's licensors.

On March 31, 1982, Trela filed his answer and counterclaims, in which he alleged that Winterland, through its agents and attorneys, had violated the antitrust and civil rights laws. Winterland moved to dismiss the counterclaims for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). On April 23, 1982, Trela filed a motion to vacate or modify the preliminary injunction. On July 22, 1982, the district court entered an order dismissing the coun-

terclaims, and denying Trela's motion to vacate or modify the injunction. It is from these orders that Trela appeals.

## II.

### A. Denial of Motion to Vacate or Modify the Preliminary Injunction

Trela did not appeal from the entry of the preliminary injunction. Accordingly, our review of the denial of his motion to vacate or modify the injunction does not extend to the propriety of the entry of the injunction itself. Instead, we are limited to inquiring whether Trela has demonstrated that changed circumstances make the continuation of the injunction inequitable. *Merrell-National Labor, Inc. v. Zenith Labor, Inc.*, 579 F.2d 786 (3d Cir.1978); *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735, 750 (7th Cir.1976).

■ Trela presented no new facts to the district court which would justify modification of the preliminary injunction. Instead, he repeated his view that the law did not support entry of the injunction in the first place. However, "[t]he motion [to modify an injunction] does not force the trial judge to permit relitigation of his original determination" that the injunction should issue, *Merrell-National Labor, supra,* 579 F.2d at 791, and the district court was correct in refusing to allow such relitigation in this case.

■ Trela also argues that the preliminary injunction should be vacated because he did not have a meaningful opportunity to participate in the preliminary injunction hearing. An examination of the record, however, demonstrates that Trela actively participated in the hearing, albeit *pro se.* Alternatively, Trela argues that the district court improperly received "illegally seized"

evidence at the hearing. The evidence of which Trela complains was obtained through a search conducted by U.S. Marshals pursuant to a valid seizure order entered October 27, 1981. Even assuming, *arguendo*, that there was some impropriety in the seizure of Trela's property on October 27, it is clear that "the Fourth and Fourteenth Amendments do *not* require in civil cases that the exclusionary ·rule be extended to situations where private parties seek to introduce evidence obtained through unauthorized searches made by state officials." *Honeycutt v. Aetna Insurance Co.*, 510 F.2d 340, 349 (7th Cir.) (emphasis in original), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2416, 44 L.Ed.2d 679 (1975).

We find no error in the district court's refusal to vacate or modify the preliminary injunction.

### B. Dismissal of Trela's Counterclaims

#### 1. Appealability of the Dismissal Order

■ Before we discuss the merits of the district court's dismissal of Trela's counterclaims, we must first determine whether we have jurisdiction to review the dismissal order at this time. Trela's counterclaims sought injunctive relief against Winterland for actions alleged to violate the civil rights and antitrust laws, as well as damages for the alleged antitrust violation and attorney's fees. As Winterland's claims against Trela remain pending, the parties agree that we may review the dismissal, if at all, only under the limited exception to the final order rule for orders denying injunctions, 28 U.S.C. § 1292(a)(1).[1]

The Supreme Court has long held that an order dismissing a counterclaim which sought injunctive relief against a single plaintiff was immediately appealable as an

---

**1.** Winterland states that the motion to dismiss should have been converted to a motion for summary judgment because it appended materials outside the record to its motion, specifically, an affidavit by one of its attorneys. The affidavit makes reference to Trela's appearance before the district court at the preliminary injunction hearing, a fact obviously known to the district court. It further cites the court to other cases

in which it successfully obtained temporary restraining orders against "bootleggers." The material presented in the affidavit could quite properly have been presented in Winterland's brief to the district court. We do not agree, therefore, that the district court was required to convert the motion to dismiss into one for summary judgment.

order denying an injunction. *General Electric Co. v. Marvel Rare Metals Co.,* 287 U.S. 430, 433, 53 S.Ct. 202, 203, 77 L.Ed. 408 (1932). The courts of appeals have reviewed such dismissals where the district court's order necessarily denied all the injunctive relief requested, *see, e.g., Perfect Fit Industries, Inc. v. Acme· Quilting Co., Inc.,* 618 F.2d 950 (2d Cir.1980), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982); *Williams v. St. Louis Diecasting Corp.,* 611 F.2d 1223 (8th Cir. 1979); *Lair v. Fauver,* 595 F.2d 911 (3d Cir.1979), or severely restricted the scope of the requested relief, *see, e.g., Build of Buffalo v. Sedita,* 441 F.2d 284 (2d Cir. 1971) and cases cited therein. *Cf. Western Geophysical Co. v. Bolt,* 440 F.2d 765 (2d Cir.1971) (where less than all counterclaims requesting injunctive relief dismissed, no appeal allowed).

The Supreme Court has recently made clear, however, that not all interlocutory orders that have the effect of denying an injunction are immediately appealable under § 1292(a)(1). In *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978), the Court held that no jurisdiction existed under that statute to review a district court order denying class certification. In refusing to certify the class, the district court was not required to reach the merits of petitioner's claim. Further, the Court determined that no irreparable harm would result from denying review of the propriety of certification until after final judgment was entered in the case. In *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), the Court found jurisdiction under § 1292(a)(1) where petitioner appealed a refusal by the district court to approve a settlement agreement in a Title VII case. The Court explained that while the effect of the order was merely to force the parties to trial, severe, perhaps irreparable, injury to the petitioner would occur if the refusal could not be reviewed until after final judgment was entered.

*Gardner* and *Carson* both reflect the Court's concern that § 1292(a)(1) be approached with caution "lest a floodgate be opened that brings into the exception many pretrial orders." *Switzerland Cheese Assoc., Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 24, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) (order denying summary judgment not appealable as order denying an injunction; denial not decision on merits but only decision that parties proceed to trial). Winterland suggests that the effect of these recent cases is to preclude our review of the dismissal of Trela's counterclaims—in effect, that *General Electric Co. v. Marvel Rare Metals Co., supra,* has been overruled *sub silentio.* We must therefore assess what effect these decisions have had on the continuing vitality of *Marvel.*

■ We note that in recent cases denying interlocutory appeal of orders which have the effect of denying an injunction, the Court has not found jurisdiction under § 1292(a)(1) when the order appealed failed to address the merits of the case, *Gardner, supra; Carson, supra.* Such an order is immediately appealable only if the appellant can show the order might cause serious, perhaps irreparable, harm if appeal were delayed until after final judgment. *See Carson,* 450 U.S. at 84, 101 S.Ct. at 996. The Court in *Gardner* thus distinguished *Marvel,* reasoning, "The order [in *Marvel*] entirely disposed of the defendant's prayer for injunctive relief; here, the order [denying class certification] merely limits the scope of the relief that may ultimately be granted." *Gardner,* 437 U.S. at 481, 98 S.Ct. at 2454. *See also Stewart-Warner Corp. v. Westinghouse Electric Corp.,* 325 F.2d 822, 829–30 (2d Cir.1963) (Friendly, J., dissenting) (an order striking a claim for injunctive relief on the merits necessarily has serious consequences, unlike "discretionary practice orders designed to avoid delay").

Since the district court's order necessarily disposed of Trela's claims on the merits, including all requests for injunctive relief, we hold that the order dismissing the counterclaims is appealable under § 1292(a)(1).

2. *Dismisssal of Trela's Civil Rights Counterclaim*

Trela's first counterclaim charges that Winterland, through its agents and attor-

neys, conspired with representatives of the U.S. Marshals Office and Chicago police officers to deprive Trela of his rights under the First,[2] Fourth, and Fourteenth Amendments, in violation of 42 U.S.C. § 1983 and the Constitution of the United States, *see Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Trela alleges that Winterland's participation in the conspiracy consisted of filing and dismissing lawsuits, and obtaining *ex parte* seizure and restraining orders in a manner calculated to deprive Trela of his right to due process. Trela also claims that Winterland "improperly used" seizure orders to conduct, with the help of the U.S. Marshals Office and the Chicago police, "illegal" searches of Trela's home and business, and to harass Trela in unspecified ways.[3]

■ We assume for a moment that the pleading requirements are identical for claims under § 1983 and *Bivens*-style actions, *see Paton v. La Prade,* 524 F.2d 862, 871 (3d Cir.1975), and that to state a claim under either, Trela must allege both that he has been deprived of a right secured by the Constitution, and that the deprivation occurred under color of law. It is on the "color of law" requirement that Trela's claim fails.

While the counterclaim alleges a conspiracy between state and federal officers and Winterland, it does so in conclusory terms. It does not present *any* facts demonstrating a colorable claim that Trela was deprived of constitutional rights by reason of actions attributable to either Chicago police officers or U.S. Marshals. Conclusory pleadings of a conspiracy must be dismissed, *Kadlec v. Illinois Bell Telephone Co.,* 407 F.2d 624, 627 (7th Cir.), *cert. denied,* 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed.2d 95 (1969), and we are compelled to ignore Trela's unsupported allegations of conspiracy.

■ It is true that joint action between a private plaintiff and a governmental actor in the seizure of disputed property will support a claim under § 1983. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482 (1982). However a private misuse of a statute or procedure, as alleged here, does not describe conduct which is actionable under § 1983 or *Bivens,* despite the participation of state officers in effecting statutory processes. *Id.* Trela alleges no facts which show that the various state and federal officers were doing more than simply discharging the duties of their offices. *See Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir.1964). Nor does Trela attack the constitutionality of the actual procedures by which Winterland obtained court orders, as opposed to the manner in which it implemented them. *Cf. Lugar,* 102 S.Ct. at 2756–57.

All that remains, then, is Trela's allegation that Winterland used the courts in a manner that deprived him of due process. Mere use of the courts by a private party, without more, does not constitute governmental action for purposes of § 1983 or *Bivens.* *See, e.g., Bloomers Shippers Assoc. v. Illinois Central Gulf Railroad Co.,* 655 F.2d 772, 776 (7th Cir.1981).

We hold that the district court properly dismissed Trela's civil rights counterclaim.

*3. Dismissal of Trela's Antitrust Counterclaim*

Trela's antitrust counterclaim is also premised on Winterland's use of the courts. Relying on the *Noerr-Pennington* doctrine, Winterland argues that the counterclaim was properly dismissed, because its use of the courts was, it claims, for the proper purpose of protecting its property rights.

---

**2.** Trela's First Amendment claim was premised on his production of the "Roc Rags" line of T-shirts, which he claimed were newspapers. The district court found as a matter of fact that they were shirts, not newspapers, and Trela does not appear to press this claim on appeal.

**3.** Trela also claims that his employees, not parties to this lawsuit, were "illegally arrested" and "falsely imprisoned."

The Supreme Court has held that bona-fide attempts to influence the actions of a legislative body are immune from antitrust scrutiny regardless of any anticompetitive motives behind those attempts. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1961). The Court extended *Noerr-Pennington* immunity to good-faith attempts to secure legitimate goals through use of the courts in *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

The immunity from antitrust liability conferred by *Noerr-Pennington* does not extend, however, to litigation which is merely a "sham." *Id.* at 512–13, 92 S.Ct. at 612–13. But as we have noted before, "[t]he *Noerr* and *Pennington* cases themselves provide little definition of what a 'sham' may be other than to indicate immunity for 'genuine efforts' and 'good faith' attempts to influence governmental bodies." *MCI Communications v. American Tel. & Tel.*, 708 F.2d 1081, 1155 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 234, 78 L.Ed.2d 226 (1982).

Trela claims that Winterland's conduct falls into the sham exception to *Noerr-Pennington* immunity. The gravamen of Trela's counterclaim is that Winterland, through a variety of tactics, deliberately denied Trela access to the courts in order to avoid a judicial determination of the nature and extent of its alleged property rights. The counterclaim alleges that Winterland repeatedly sought and obtained so-called "John Doe" *ex parte* restraining orders, intended to be used to restrain Trela's T-shirt operation, even though Winterland knew Trela's identity when it requested *ex parte* relief. Trela further alleges that Winterland purposely delayed filing actions until the day before a licensor's scheduled performance and then repeatedly dismissed such actions against Trela after the concert was over and the market value for his products had been severely reduced. Trela claims that Winterland's purpose in proceeding in this manner was to avoid an adjudication on the merits of its property rights while simultaneously eliminating Trela as a competitor during performances.[4]

As this court has previously noted, "[I]t has long been thought that litigation could be used for improper purposes even where there is probable cause for the litigation; and if the improper purpose is to use litigation as a tool for suppressing competition in the antitrust sense ... it becomes a matter for antitrust concern." *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 472 (7th Cir.1982). In analogizing "sham" litigation to the tort of abuse of process, the court in *Grip-Pak* stated, "The line [between protected and unprotected litigation] is crossed when [the defendant's] purpose is not to win a favorable judgment against a competitor but to harass him, and deter others, by the process itself—regardless of outcome—of litigating." *Id.* See Note, *Limiting the Antitrust Immunity for Concerted Attempts to Influence Courts and Adjudicatory Agencies: Analogies to Malicious Prosecution and Abuse of Process*, 86 Harv.L.Rev. 645, 732–35 (1973). One court has explained the sham litigation exception in words directly applicable to Trela's counterclaim:

> Without a doubt, the intention to harm a competitor is *not* sufficient to make litigation ... a sham. That anticompetitive motive is the very matter protected under *Noerr-Pennington*. Rather, the prerequisite motive for the sham exception is the intent to harm one's competitors not by the *result* of the litigation but by

---

**4.** Winterland points to its success in obtaining temporary restraining orders as evidence that its claims were not shams. As Professor Areeda has noted, "If the antitrust defendant's claim was successful in the other forum, there is a strong presumption that its assertion cannot have been a sham." Areeda, *Antitrust Law*, 1982 Supp. ¶ 203.1.d. However, since TRO's can be obtained *ex parte*, we do not consider Winterland's success in obtaining them dispositive.

the simple fact of the *institution* of the litigation.

*Gainesville v. Florida Power & Light Co.*, 488 F.Supp. 1258, 1265–66 (S.D.Fla.1980) (emphasis in original).

We express no opinion on the ultimate merit of Trela's claim that Winterland violated the antitrust laws. But his allegations that Winterland's interest was not in obtaining a judgment, but eliminating a competitor, are sufficiently supported to allow him to survive a motion to dismiss for failure to state a claim. Accordingly, we reverse the district court's dismissal of the antitrust counterclaim.

### III.

For the reasons expressed above, we affirm the district court's orders denying Trela's motion to vacate or modify the preliminary injunction, and dismissing the civil rights counterclaim. We reverse the dismissal of the antitrust counterclaim, and remand for further proceedings. The parties shall bear their own costs on appeal.