W.W. ENTERPRISE, INC.; Jeff Whitson, d/b/a Sports Marketing Connection; Jim Clark, d/b/a Racing Showcase; Rocky Wagner, d/b/a Creative Design Sportswear; Steve Crutchfield, d/b/a R.S.S. Motorsports; Ronnie Pegram, d/b/a Green Flag Souvenirs; Nookie Green, d/b/a Green's Racing Souvenirs;

Jim Delong, d/b/a Southeast Racing; Doug and Julie Cummins, d/b/a D.J.'s Raceshop; Ray Shough, d/b/a Stockcar Souvenir Showcase; and Ed Morrison and Patrick Jones, d/b/a Ed & Pat Enterprises, Plaintiffs,

v.

**CHARLOTTE MOTOR SPEEDWAY, INC., Defendant.**

No. C–C–90–324–P.

United States District Court, W.D. North Carolina.

Dec. 19, 1990.

W. Thad Adams, III, Hugo A. Pearce, III, Charlotte, N.C., for plaintiffs.

Fred T. Lowrance, Kip A. Frey, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THESE MATTERS are before the Court on Plaintiffs' motion, filed October 31, 1990, to stay a pending state case until this federal matter is resolved, and Defendant's motion, filed November 26, 1990, to stay this matter pending the disposition of the pending state matter. On November 26, 1990, Defendant filed a memorandum in opposition to Plaintiffs' motion for a stay of the state case. On December 13, Plaintiffs filed a response to Defendant's motion to stay the federal case and a reply to Defendant's response to Plaintiffs' motion to stay the state case. Defendant, on December 18, 1990, filed a reply to Plaintiffs' response to Defendant's motion to stay.

## I. PROCEDURAL AND FACTUAL BACKGROUND.

Plaintiffs are souvenir vendors that sell merchandise at automobile race facilities throughout the United States. Plaintiffs travel from event to event during the racing season and sell souvenirs at the race track before and during the event. One of the race facilities at which Plaintiffs sell their merchandise is the Defendant Charlotte Motor Speedway (hereinafter "CMS" or "Defendant").

The dispute in this case involves a series of *ex parte* seizure Orders and Temporary Restraining Orders from state courts that Defendant has obtained against Plaintiffs and other vendors since 1981. There are two large races held each year at CMS during the months of May and October. Several days before each of these races, souvenir vendors lease an empty lot across from CMS to sell T–Shirts and other merchandise that refer to auto racing and in some instances the geographical location (Charlotte) of the race. CMS has over the years attempted to vigorously protect its trademark which is a unique diagram of a "stock car" and the words "Charlotte Motor Speedway".

To accomplish this goal, CMS has since 1981 before most of its big races obtained an *ex parte* seizure Order and Temporary Restraining Order from the state court. The Order directs state law enforcement officers to seize any apparel items or merchandise bearing the word "Charlotte", the dates on which the race was to be held at CMS, and representations of race cars.

There is no evidence in this record that Plaintiffs have attempted to sell merchandise bearing CMC's stock car logo or the words "Charlotte Motor Speedway". Instead, Plaintiffs' merchandise appears to contain other diagrams of stock cars, references to racing, references to Charlotte, and in some instances, references to dates that coincide with races being conducted at CMS.

During the morning of October 5, 1990, Defendants obtained an *ex parte* seizure order from a state District Court Judge for Cabarrus County, North Carolina (hereinafter "state case") in reference to a race being conducted on October 7, 1990. At a second hearing during the afternoon of October 5, 1990 in which Plaintiffs' counsel was present, the state court judge reaffirmed the seizure order. Thereafter, law enforcement officers seized several thousands of dollars worth of merchandise from Plaintiffs and other vendors.

On October 12, 1990, Plaintiffs filed the action currently pending before this Court (hereinafter "federal case"). In the complaint, Plaintiffs contend that the course of conduct of CMS over the past nine (9) years constitutes a pattern of baseless, repetitive claims filed by CMS for the purpose of obtaining relief without affording Plaintiffs an opportunity for a hearing on the merits, and then, after the damage was done and the race over, filing a dismissal of the action. Plaintiffs state that in no fewer than eleven (11) instances, CMS has obtained *ex parte* seizure orders based upon its claimed trademark rights. However, in no instance has CMS ever pursued the state court litigation to a decision on the merits.

In Count Three of the complaint, Plaintiffs charge that this anti-competitive conduct is violative of § 2 of the Sherman Antitrust Act as an attempt to monopolize. The complaint in Count One requests a declaratory judgment of non-infringement, invalidity, and unenforceability of Defendant's federal and state trademark. Count Two seeks the cancellation of Defendant's federal servicemark registration. Count Four asserts a claim of unfair competition in violation of N.C.Gen.Stat. § 75–1.1. And Plaintiffs, in Count Five, allege a violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*

## II. PLAINTIFFS' MOTION TO STAY THE STATE CASE.

In support of the motion to stay the state case (filed October 5, 1990) until the federal case is resolved, Plaintiffs contend that the Anti–Injunction Act is inapplicable to this case. That statute, codified at 28 U.S.C. § 2283, provides:

A Court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

By the clear language of the statute, a federal court may not enjoin proceedings in a state court except in one of the following three (3) circumstances: (1) if there is an expressly authorized exception to the Anti–Injunction Act; (2) if the injunction is necessary in aiding the jurisdiction of the federal court; and (3) if the injunction is necessary to protect or effectuate the judgments of the federal court. *See Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977); *Mitchum v. Foster*, 407 U.S. 225, 226, 92 S.Ct. 2151, 2153, 32 L.Ed.2d 705 (1972). In this case, Plaintiffs rely solely on the first exception to the Anti–Injunction Act—an expressly authorized exception to the Act.

Plaintiffs rely on a concurring opinion from the United States Supreme Court case of *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) in arguing that an expressed authorized exception to the Anti–Injunction Act permits a federal court to issue an injunction staying a state court case if violations of the anti-trust laws are at issue in the federal case. In *Vendo*, the United States District Court enjoined an ongoing state case. Although the Clayton Act does not specifically provide an exception to the Anti–Injunction Act, the district court and the affirming Seventh Circuit Court of Appeals nonetheless found that § 16 of the

Clayton Act was an express exception to § 2283. *Id.* at 629, 97 S.Ct. at 2886.

A plurality of the Court reversed the district court and the Seventh Circuit. Justice Rehnquist, with Justices Stewart and Powell joining, held that § 16 of the Clayton Act on its face is far from an express exception to the Anti–Injunction Act. In reiterating previous precedent, the Court stated, "[A]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* at 630, 97 S.Ct. at 2887 (citing *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970)). Although explicit language excepting the Anti–Injunction Act does not have to be provided in a statute if there exists sufficient evidence in the legislative history demonstrating that Congress recognized and intended the statute to authorize injunctions of state-court proceedings, such legislative history in connection with the enactment of § 16 of the Clayton Act was not presented to the Supreme Court. *Id.* 433 U.S. at 633–34, 97 S.Ct. at 2888–89. The Court noted that to find exceptions to the Anti–Injunction Act whenever an important federal question was involved would completely eviscerate the Act. Thus, the Supreme Court limited the statutory exception to § 2283 to only a few instances. "[S]ection 16 of the Clayton Act, which does not by its very essence contemplate or envision any necessary interaction with state judicial proceedings, is clearly not such an Act." *Id.* at 641, 97 S.Ct. at 2892.

Justice Blackmun, with Chief Justice Burger joining, concurred with the result of the plurality but offered an alternative test for reaching the plurality's result. Justice Blackmun stated that he believed no injunction could issue from a federal court to stay a state court proceeding unless "[t]hose proceedings are themselves part of a 'pattern of baseless, repetitive claims' that are being used as an anti-competitive device, all the traditional prerequisites for equitable relief are satisfied, and

the only way to give the antitrust laws their intended scope is by staying the state proceedings." *Id.* at 644, 97 S.Ct. at 2894 (citing *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 513, 92 S.Ct. 609, 613, 30 L.Ed.2d 642 (1972)). Because only one state-court proceeding was at issue in *Vendo,* Justice Blackmun found that there was no evidence of a "pattern of baseless, repetitive claims", and therefore, it could not be said that the use of the state-court proceeding was an anti-competitive device in and of itself.

The remaining four justices dissented. Those Justices found a much broader test was applicable to § 2283. "[T]he test is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of state court proceeding". *Id.* 433 U.S. at 656, 97 S.Ct. at 2900. The dissenters did not adopt or comment favorably on Justice Blackmun's alternative test.

In this case, Plaintiffs argue that the Blackmun test was adopted by six (6) of the nine (9) justices. Accordingly, Plaintiffs argue that if they can demonstrate Defendant engaged in a "pattern of baseless, repetitive claims", this Court has the authority under *Vendo* to enjoin the state court proceedings.

█ The Court believes that it is not necessary to evaluate this matter under Justice Blackmun's alternative test. As the Court has already noted, there is no indication in the dissent that those four (4) justices intended to adopt the Blackmun test. To the contrary, the dissent criticizes the concurrence of Justice Blackmun and Chief Justice Burger. *Id.* at 660–63, 97 S.Ct. at 2902–04. Therefore, the Court believes that Plaintiffs' claim that the Blackmun alternative test is controlling law is simply incorrect. Rather, it appears that only two (2) Justices have adopted that test. Moreover, the Supreme Court recently had the opportunity to adopt the Blackmun test if it was so inclined. It failed to do so. *See Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 108 S.Ct. 1684, 1689,

100 L.Ed.2d 127 (1988) (stating that exceptions to Anti–Injunction Act are "not to be enlarged by loose statutory construction"). Accordingly, the Court believes that the plurality opinion from *Vendo* is controlling law and that for an injunction to stay proceedings in a state court based on an expressly authorized Act of Congress, the statute must provide explicit language or legislative history indicating that Congress intended for the statute to be removed from the purview of the Anti–Injunction Act.

■ The Court is unaware of any Fourth Circuit case in which the Blackmun test was adopted. Furthermore, the applicable statute in *Vendo* was the Clayton Act. In this case, Plaintiffs have alleged a violation of the Sherman Act. Plaintiffs have not introduced any evidence from the legislative history or the language of the statute that indicates that Congress intended to provide an exception to the Sherman Act. Therefore, the Court believes that Plaintiffs' reliance on *Vendo* is misplaced. Because the Court must resolve any doubt as to whether the circumstances in this case constitute an exception to the Anti–Injunction Act in favor of allowing the state matter to proceed, the Court believes that Plaintiffs' motion must be denied on the basis of the Sherman Act failing to expressly provide an exception to the Act. *See Bryant Elec. Co., Inc. v. Joe Rainero Tile Co.*, 84 F.R.D. 120, 125 (W.D.Va.1979).

■ Even if the Court was inclined to adopt the Blackmun test, it would find that the state proceeding should not be stayed. The Court does not believe Plaintiffs have demonstrated that Defendant's actions in obtaining state seizure orders are baseless. To the contrary, it appears that Defendant has been successful each time it has sought to seize merchandize that it believes infringes its trademark. Although Defendant has chosen not to litigate its claims after the races are completed, Defendant can hardly be penalized for choosing to minimize its expense by forgoing protracted litigation after its goals have been accomplished. Plaintiffs have raised numerous arguments that the trademarks were not valid and the state proceedings were shams. The Court does not intend at this point in the proceedings to perform a jury function in determining what is in effect the entire crux of this case. Nor does the Court believe that it should act as a state appellate court in reviewing each of the eleven (11) state decisions after the fact. Therefore, even if the Court adopted the Blackmun test (which it has no intention of doing), Plaintiffs' arguments would fail because there has not been a showing that Defendant's actions were baseless.

For the aforementioned reasons, the Court will deny Plaintiffs' motion to stay the state proceeding while the federal case is pending.

## III. DEFENDANT'S MOTION TO STAY THE FEDERAL CASE.

In support of its motion to stay the Federal case until the state case is resolved, CMS claims that each count of the federal complaint is either: (a) duplicative of an issue in the state case; (b) subject to being rendered moot by a result favorable to CMS in the state case; or (c) completely irrelevant to the controversy between the parties. Accordingly, CMS argues that the federal action should be stayed to promote judicial efficiency and to avoid duplicative litigation.

In support of its argument, CMS relies primarily on the United States Supreme Court case of *Colorado River Water Conservation District v. United States*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976). In that case, the United States brought an action in federal court on behalf on two (2) Indian tribes seeking a declaration of its rights to waters in certain Colorado rivers. Shortly thereafter, one of the defendants in the federal action brought a suit in state court. The district court, on abstention grounds, dismissed the federal action granting deference to the proceedings of the state court. The Tenth Circuit Court of Appeals reversed holding that the federal action was within district court jurisdiction under 28 U.S.C. § 1345, and that abstention was inappropriate. *See*

*generally* 424 U.S. 800, 802–06, 96 S.Ct. 1236, 1239–41, 47 L.Ed.2d 483.

In reversing the Court of Appeals, the Supreme Court addressed the issue of whether dismissal under the doctrine of abstention was appropriate. The Court first noted that "[A]bstention from the exercise of federal jurisdiction is the exception, not the rule ... (and) is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.". *Id.* at 813, 96 S.Ct. at 1244. The Supreme Court then listed the following three (3) narrow categories of circumstances appropriate for abstention:

(1) Abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law;

(2) Abstention is appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; and

(3) Abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings.

*Id.* at 814–17, 96 S.Ct. at 1244–46. After evaluating each of the categories, the Court found that none were applicable to the facts in the *Colorado River* case. *Id.*

The Supreme Court went on to find that even if a matter does not fall into one of the three (3) categories, abstention may be appropriate if the goal of the exercise of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition in litigation" can be accomplished. *Id.* at 817, 96 S.Ct. at 1246. However, the general rule remains that "[t]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction". *Id.* (citation omitted). Thus, the instances in which abstention can be invoked due to the presence

of a concurrent state proceeding for reasons of wise judicial administration are extremely limited. *Id.* at 818, 96 S.Ct. at 1246. Factors that must be evaluated include the inconvenience of the federal forum, the desirability of avoiding piece-meal litigation, and the order in which jurisdiction was obtained by the concurrent forums. *Id.* "[N]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Id.* at 818–19, 96 S.Ct. at 1246. After evaluating these factors, the Supreme Court in the *Colorado River* case found that the clear federal policy of avoiding piece-meal litigation of water rights required that the federal matter be dismissed. *Id.* at 819–21, 96 S.Ct. at 1247–48.

In this case, the aforementioned three (3) categories are clearly inapplicable. First, no important constitutional questions have been presented. Second, the state case is a straight-forward trademark action without obvious public import. And finally, these actions are not criminal. Therefore, the only basis for staying the federal case is if the goal of the exercise of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition in litigation" can be accomplished.

■ In evaluating the factors listed by the Supreme Court in *Colorado River,* the Court believes that abstention is not appropriate in this case.

First, there is no evidence that inconvenience will result to Defendant if the federal matter proceeds. Defendant and its attorneys are located in this district. Moreover, since many of the factual issues in both cases are similar (but not identical), discovery from both the state and federal actions should be interchangeable.

Second, the Court does not believe that staying the federal action would eliminate piece-meal litigation. As Plaintiffs note in their response, not all of the Plaintiffs in the federal case are Defendants in the state case. Therefore, the argument by

CMS that a favorable decision to it in the state court would moot the federal Plaintiffs antitrust claims is clearly erroneous as to those unnamed parties. Moreover, the Court is not convinced that a decision by the state court that Plaintiffs violated CMS's valid state trademarks completely moots the antitrust issues in the federal action. *Cf. Winterland Concessions Co. v. Trela,* 735 F.2d 257, 263 (7th Cir.1984). Plaintiffs may be able to convince a federal jury that despite CMS's meritorious results in state court, those actions in combination with other acts amounted to anti-competitive behavior. Finally, the Court would also note that while CMS's state trademark claims could be pleaded as counter-claims in the federal case, the only forum available for Plaintiffs to bring their Sherman Act claims is in federal court. Therefore, the Court believes that the issues presented in the federal case will most likely have to be litigated in a federal forum regardless of the result in the state case.

Third, the Court does not believe the fact that the state case was filed several days before the federal case is a significant enough reason to justify the extraordinary action of invoking the abstention doctrine.

As CMS itself notes, the state case is "[a] straight-forward *state trademark infringement lawsuit*". *See CMS's Memorandum in Opposition to Stay State Case,* filed November 26, 1990, at 6 (emphasis in original). CMS went to great lengths to emphasize this fact when it argued that the Anti–Injunction Act was inapplicable to this case. Now, CMS has attempted to deemphasize this fact by arguing that duplicative litigation would result if the federal case is not stayed. The Court believes that this contradictory argument is without merit. The state case is in CMS's own words a straight-forward state trademark infringement lawsuit. On the other hand, the federal action is primarily an antitrust lawsuit. Therefore, the Court believes that it would be inequitable to Plaintiffs to delay this matter possibly until after the next big race in May, 1991 while the state case is pending.

For the reasons stated herein, the Court will deny CMS's motion to stay the federal case until the state matter is resolved.

## IV. THE REQUESTS FOR A HEARING.

Both parties have requested that the Court conduct a hearing on these matters. Because the issues presented were well briefed, the Court does not believe a hearing is necessary. Therefore, the parties' request for a hearing will be denied.

## V. ORDER OF THE COURT.

NOW, THEREFORE, IT IS ORDERED that Plaintiffs' motion to stay the state case until the federal case is resolved be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Defendant CMS's motion to stay the federal case until the state case is resolved be, and hereby is, DENIED.