In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 14-3133

COMMODITY FUTURES TRADING COMMISSION,

*Plaintiff-Appellee,*

*v.*

NIKOLAI S. BATTOO, *et al.*,

*Defendants.*

Appeal of:

HADLEY CHILTON and JOHN J. GREENWOOD, as Liquidators of certain investment funds registered in the British Virgin Islands

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 7127 — **Edmond E. Chang**, *Judge.*

---

ARGUED APRIL 21, 2015 — DECIDED JUNE 23, 2015

---

Before EASTERBROOK and RIPPLE, *Circuit Judges*, and REAGAN, *District Judge.**

---

* Of the Southern District of Illinois, sitting by designation.

EASTERBROOK, *Circuit Judge.* The Commodity Futures Trading Commission and the Securities and Exchange Commission have concluded that Nikolai Battoo committed fraud. Battoo and his companies, all located outside the United States, have defaulted in the two agencies' suits, and the district judge froze all assets they controlled pending a final decision about who owns what. Given the defaults, that preliminary injunction was issued without an adversarial presentation. The district court appointed a Receiver to marshal the remaining assets and try to determine ownership; the Receiver has been recognized as the assets' legitimate controller in several other nations, including China (Hong Kong), Guernsey, and the Bahamas.

Battoo defied the injunction and transferred control of some investment vehicles, located in the British Virgin Islands, to court-appointed Liquidators, who asked the district judge to modify the injunction and allow them to distribute assets immediately. (The assets in question are located in the United States or England, where the funds had placed them, and thus are effectively controlled by the Receiver while the injunction lasts.) The Liquidators maintain that, because Battoo no longer calls the shots, the justification for freezing the assets has lapsed. The district court assumed that even though Battoo had arranged for the Liquidators' appointment, they are now under judicial control. Still, it declined to modify the injunction, ruling that the funds should remain available so that an eventual master plan of distribution can treat all investors equitably. The Liquidators contend that we should order all of the assets that passed through the British Virgin Islands funds surrendered to their control immediately for prompt distribution under whatever system British Virgin Islands law specifies.

The CFTC alleges—and given the defaults we must assume—that Battoo persuaded approximately 800 persons throughout the world to invest about $340 million in his funds. Some 250 of these persons resided in the United States; they invested in commodity pools that Battoo styled Private International Wealth Management. Battoo solicited investments through materials distributed in this nation; the Liquidators do not deny that this subjected Battoo to the requirements of federal commodities and securities laws. This is not necessarily a reason to disturb the distribution priorities of other nations' investors, but the CFTC believes, and the district court provisionally found, that commingling of assets makes it hard to know whose money ended up in which vehicle.

According to the complaint, Battoo stole some of the investors' money (fraud #1) and placed the rest in a web of funds, all of which he controlled directly or indirectly. He moved the money freely across funds, or from one portfolio to another within any given fund, in a way that made tracing of each investment difficult. In 2008 Phi R Master, one of the funds, suffered significant losses, which Battoo hid from both current investors and potential new investors (fraud #2). Later in 2008 several funds sustained further losses when it came to light that Bernard Madoff (with whom between 7% and 20% of each Battoo fund's assets had been placed) had been running a Ponzi scheme. Yet Battoo told existing and potential new investors that "the current Madoff situation will have practically no impact to [sic] its portfolios" (fraud #3). In September 2009 Battoo provided some investors with false verifications of their assets' value (fraud #4), and in late 2011 he suspended redemptions after falsely telling investors that the collapse of commodity bro-

ker MF Global, Inc., prevented operations (fraud #5, since Battoo's funds did not depend on MF Global, whose failure had no material effect on their status). Even without transfers among the funds, this sequence shows the potential difficulty in sorting out who owns what, because investments that preceded any given fraud would be affected differently from investments made later. This is a simplified version of the CFTC's allegations; more detail is not necessary to understand the district court's decision and the Liquidators' appeal.

In denying the Liquidators' motion, the district judge observed that releasing the assets would lead to distribution, a step that the judge thought premature because the Receiver has yet to ascertain all investors' interests in each particular fund and propose a plan about how the losses will be shared across the different groups of investors. The judge stated repeatedly that it remains to be determined who gets what—and that the Liquidators, like any other interested party, will be entitled to full judicial review (by the district judge and the court of appeals) before the Receiver's eventual proposal is implemented.

The Liquidators' appeal reflects a view that there is no reason to keep funds frozen now that Battoo is no longer in control. One could say the same, we suppose, for all funds under the Receiver's management, but no one would think that this implies that the Receiver should distribute the funds *immediately*. Who owns what, and how the frauds affected each investment's value, need to be worked out. The Liquidators are confident that they know the answers to those questions, at least for the British Virgin Islands funds,

but they have not demonstrated that the district judge is obliged to share their optimism.

The Liquidators tell us that a court should grant a motion to modify a preliminary injunction when the movant "has demonstrated that changed circumstances make the continuation of the injunction inequitable." *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 260 (7th Cir. 1984). It is not clear to us that this is the right standard. It parallels Fed. R. Civ. P. 60(b)(5), which says that a district judge may modify a judgment when "applying it prospectively is no longer equitable". See also, e.g., *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992); *Horne v. Flores*, 557 U.S. 433 (2009). Yet Rule 60(b) as a whole governs requests to modify final decisions. The district court has not made a final decision in this litigation. On the way to final decisions, district judges usually may modify their tentative views. Certainly when crafting a final injunction, a district judge is not stuck with the preliminary order in the absence of a finding that it is "inequitable"; the judge is not constrained at all by the preliminary disposition when selecting the final remedy.

At the same time, the fact that a final injunction lies ahead reduces the cost of sticking with the preliminary injunction. Preliminary relief will be superseded by the final decision. Instead of devoting resources to refining an interim order, a district judge is entitled to spend available time figuring out whether permanent relief is justified and, if so, what its terms should be. Fiddling with a preliminary injunction's terms may do damage if it postpones the final decision. We do not doubt, however, that a district judge has discretion to revise a preliminary remedy if persuaded that change had benefits for the parties and the public interest.

We need not decide whether the "no longer equitable" standard applies to preliminary injunctions. The CFTC contends that judges should look for "a change in 'the totality of the circumstances' surrounding" the events, and as we've just mentioned there are other possibilities too. No matter the standard, we must ask whether the district court abused its discretion by leaving the injunction as originally written. See, e.g., *Horne*, 557 U.S. at 447.

We do not see any abuse here—in part for the reason the district judge gave (that it is too soon to know whether the Liquidators are right to think that some investment interests can be disentangled reliably from those affected by Battoo's frauds against U.S. investors) and in part because there are no apparent costs to waiting. The Liquidators have not argued that any investor suffers from delay. If the Receiver were investing the funds poorly, then releasing them (or reaching a final decision with dispatch) might be necessary to prevent further injury to the investors. But the Liquidators have not argued that any investor is suffering loss as a result of the Receiver's investment decisions. And if there is both a potential for gain, and no potential for loss, from keeping the assets in the Receiver's hands for now, it cannot be an abuse of discretion for the district court to do just that.

AFFIRMED