**GENERAL MOTORS CORPORATION,**
Plaintiff-Appellee,

v.

**GIBSON CHEMICAL & OIL CORP.,**
and Lee J. Roth,
Defendants-Appellants,

and

**Aid Auto Stores, Inc., Claumar Auto Stores, Inc. d/b/a Aid Auto Store, Anthony Restrepo, Globe Motorist Supply Co., Inc., Globe 3rd Street Realty Inc., Top Value Automotive Exporters Ltd., Alvin G. Cutler, Marc Cutler, Dean Cutler and Joseph Kiliemi, Defendants.**

**No. 132, Docket 85-7410.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 1, 1985.
Decided March 21, 1986.

See also, D.C., 627 F.Supp. 678.

Robert G. Del Gadio, Garden City, N.Y. (Warren S. Beckerman, Garden City, N.Y., of counsel), for defendants-appellants.

Carroll E. Neesemann, New York City (Parker Auspitz Neesemann & Delehanty, Kim J. Landsman and Hollis L. Hyans, New York City, Gilpin, Maynard, Parsons, Pohl & Bennett and Martin D. Beirne, Houston, Tex., of counsel), for plaintiff-appellee.

Before VAN GRAAFEILAND, CARDAMONE and MINER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Gibson Chemical and Oil Corporation and its president, Lee J. Roth, appeal from an order of the United States District Court for the Eastern District of New York (McLaughlin, J.) granting appellee General Motors Corporation's motion for a preliminary injunction and confirming an *ex parte* order authorizing the seizure of goods which allegedly infringed a General Motors trademark. Appellants contend that the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116 and 18 U.S.C. § 2320, which authorizes the *ex parte* seizure of infringing goods, violates the Fourth and Fifth Amendments; that certain temporary restraining provisions incorporated in the order of seizure violated the First Amendment; that the grounds upon which the seizure order was issued did not meet the statutory requirements, and that it was unlikely that General Motors would prevail on the merits of its suit. Appellants also contend that Roth is not a proper party. For the reasons stated below, we affirm.

In 1984, Daniel Elliott, Director of Security for the General Motors Service Parts Organization, received a number of complaints about an inferior automotive transmission fluid that was being marketed under the name of "Dexron II", a registered trademark of General Motors. Investigation prompted by the complaints led to the discovery of several cans of what purported to be Dexron II at wholesale and retail automotive supply outlets in the New York area. Those cans bore the notation "Distributed by AF Products, New York, New York". Although General Motors licenses the manufacture of Dexron II to companies who agree to adhere to General Motors' specifications, the investigators suspected that the AF Products fluid was counterfeit, because its cans did not display correctly the identification number that was required by General Motors' licensing agreements. Moreover, GM laboratory tests revealed that the AF Products fluid did not meet GM specifications.

Investigators traced the AF Products transmission fluid to Gibson Chemical and Oil, where they found identical AF Products cans discarded in a dumpster. Investigators also located cans containing the counterfeit fluid at other automotive suppliers and traced them to the Gibson plant.

Based on the evidence obtained through its investigations, GM secured an *ex parte*

order temporarily restraining Gibson from distributing its falsely marked fluid and authorizing the seizure of the fluid located at the Gibson plant. After a full hearing, the district court confirmed the order of seizure and enlarged the temporary restraining order into a preliminary injunction. It is from these rulings that Gibson and Roth now appeal.

 Although appellants make a broadside challenge to the district court's rulings, we are confronted at the outset with questions of appealability. The preliminary injunction, which touches on the merits of GM's claim, is, of course, reviewable. *See International Products Corp. v. Koons,* 325 F.2d 403, 406–07 (2d Cir. 1963); 28 U.S.C. § 1292(a)(1). The temporary restraining order, issued *ex parte* and expiring within ten days, is not. *Grant v. United States,* 282 F.2d 165, 167 (2d Cir. 1960). Accordingly, we need not address appellants' claim that, insofar as the temporary restraining order prohibited them from notifying their suppliers and customers of the litigation and the actions taken therein, it violated appellants' First Amendment rights.

 Appellants suggest several reasons why the district court's order confirming the writ of seizure is appealable. They argue first that the order was a final order appealable under 28 U.S.C. § 1291. However, because the order might be modified by the district court, and because it did not determine the rights of the parties with respect to the seized property but only sequestered it pending trial, the order lacks the requisite finality for reviewability. *See Weight Watchers of Philadelphia v. Weight Watchers International, Inc.,* 455 F.2d 770, 772 (2d Cir.1972).

 Appellants next contend that, because the essential requirements for obtaining a seizure order and an injunction are the same, the seizure order is the equivalent of a preliminary injunction and therefore should be appealable under 28 U.S.C. § 1292. General Motors contends on the other hand that a seizure order is the equivalent of an order of attachment,

the grant of which is unappealable in this Circuit. *See W.T. Grant Co. v. Haines,* 531 F.2d 671, 678 (2d Cir.1976). We see no need to resolve this contest of equivalences. Where, as here, there has been no showing that the district court's interlocutory order might have a "serious, perhaps irreparable, consequence" and can be "effectually challenged" only by immediate appeal, the order does not meet the statutory requirements for interlocutory appeal. *See Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981).

 Appellants' invocation of the collateral order doctrine of *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), is no more successful. To meet the requirements for reviewability under *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal. *Richardson-Merrell, Inc. v. Koller,* —— U.S. ——, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985). The seizure order in this instance does not resolve an issue wholly separate from the merits of the action; indeed, a showing of likelihood of success on the merits was required before the seizure order could issue. *See* 15 U.S.C. § 1116(d)(4)(B)(iii). Moreover, the seizure is reviewable on final appeal, and the statute provides a damages remedy, should the seizure be held to have been wrongful. *See id.* § 1116(d)(11).

 Finally, appellants urge this Court to exercise pendent appellate jurisdiction over the seizure order. The exercise of pendent jurisdiction to review an otherwise nonappealable order is discretionary with the Court, *Marcera v. Chinlund,* 595 F.2d 1231, 1236 n. 8 (2d Cir.), *vacated on other grounds sub nom. Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979), and in most cases it is a practice better avoided, 16 Wright & Miller, *Federal Practice and Procedure* § 3937 at 270–71. We decline to exercise it here. Pendent appellate jurisdiction should not be exercised unless the issues presented by the appealable and

nonappealable orders overlap. *Sanders v. Levy,* 558 F.2d 636, 643 (2d Cir.1977), *rev'd on other grounds sub nom. Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Although the decisions to issue the preliminary injunction and the seizure order involved consideration of some common factors, appellants' arguments concerning these decisions on appeal are markedly diverse. Appellants contend, for example, that serious constitutional infirmities exist in the Trademark Counterfeiting Act's seizure provisions. Because these contentions were not argued and ruled upon below, *see Vintero Corp. v. Corporacion Venezolana de Fomento,* 675 F.2d 513, 515 (2d Cir. 1982), there is little incentive for us to stretch our jurisdiction to entertain the appeal from the seizure order. A ruling by this Court relative to the Act's seizure provisions would not terminate the litigation, *see United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982); it is better, therefore, that it be made in "a single appeal following final judgment on the merits", *Firestone Tire and Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).

The resultant delay will not leave Gibson's interests unprotected. The Trademark Counterfeiting Act authorizes the issuance of an *ex parte* seizure order only after "the court finds that it clearly appears from specific facts" that no other remedy would achieve the purposes of the Act, that the party requesting seizure is likely to succeed in showing that the seized goods violated the Act's provisions, and that irreparable harm will occur which outweighs the legitimate interests of the person whose property is seized unless the seizure is effected. 15 U.S.C. § 1116(d)(4). Moreover, the Act requires a prompt post-seizure hearing, *id.* § 1116(d)(10)(A), and mandates that the party seeking the order post security adequate to cover damages resulting from a wrongful seizure, *id.* § 1116(d)(4)(A). The Act also provides that a party damaged by a wrongful seizure shall have a cause of action against the applicant for all appropriate relief. *Id.*

§ 1116(d)(11). "It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 612, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974) (quoting *Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 599, 70 S.Ct. 870, 872, 94 L.Ed. 1088 (1950)). Appellants have had their hearing, and, in due course, will have the benefit of appellate review.

Turning to the merits of the sole reviewable order issued by the district court, we must defer of course to the district court's decision to issue the preliminary injunction unless there has been an abuse of discretion. *Power Test Petroleum Distributors v. Calcu Gas, Inc.,* 754 F.2d 91, 95 (2d Cir.1985). One who seeks a preliminary injunction must show that he will suffer irreparable harm unless the injunction issues and, either that he is likely to succeed on the merits, or that there are serious questions relative to the merits and the balance of hardships tip in his favor. *Id.* In a trademark action, a showing of confusion as to the source of a product ordinarily will establish that a risk of irreparable harm exists to the reputation of the trademark sought to be protected. *See Standard & Poor's Corp. v. Commodity Exchange,* 683 F.2d 704, 708 (2d Cir.1982); 2 J. McCarthy, *Trademarks and Unfair Competition* § 30.15 at 485. Testimony at the hearing showed that there was confusion as to the source of the counterfeit Dexron II, and Gibson's use of General Motors' mark created likelihood of such confusion. *See Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,* 411 F.2d 1097, 1100–01 (2d Cir.1969), *cert. dismissed,* 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970).

Evidence presented at the hearing also suggested that GM was likely to prevail on the merits. Dexron II is a registered trademark of General Motors, and Gibson was not licensed to use the mark. Gibson's knowledge that Dexron II was a registered trademark can be inferred from its use of the symbol "®" following the mark, and from Gibson's use of the six-character identification number which had a false appear-

ance of legitimacy. This evidence, when coupled with the showing of actual confusion in the minds of consumers, provided ample support for the district court's finding that GM established the requisite likelihood of success on the merits. *See Standard & Poor's Corp. v. Commodity Exchange, supra,* 683 F.2d at 708; *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). Of course, in so holding, we do not purport to decide the case on the merits.

Appellants assert by way of defense that GM has misrepresented the source of Dexron II to the public, that GM's recommended use of Dexron II in its cars constitutes an illegal tying arrangement, and that GM has abandoned the Dexron II mark by licensing its use to numerous distributors. We see nothing in those contentions that would have warranted the denial of injunctive relief.

■■■■ An unlawful tying arrangement, which can be a defense to a trademark infringement action, *see* 15 U.S.C. § 1115(b)(7), conditions the sale or lease of one product on the purchase or lease of another separate product from the same seller. *Power Test Petroleum v. Calcu Gas, Inc., supra,* 754 F.2d at 95–96. Two key elements of the classic tying arrangement are lacking here. GM does not sell both automobiles and Dexron II; it only furnishes specifications for Dexron II to licensed manufacturers and monitors the fluid produced to ensure its conformity to those specifications. The Dexron II product is sold by the licensees, and GM receives no royalties from those sales. Of course, the sale of a GM automobile is not conditioned on the purchase of Dexron II. GM simply recommends use of the fluid in its automatic transmissions and cautions that damage to transmissions caused by the use of other fluids may not be covered by the automobile warranty. This manufacturer's recommendation is not the degree of coercion necessary to a tying arrangement. *See id.* at 96.

■■■■ Appellants' claim that GM's licensing program for Dexron II misrepresents the origin of the product and thus deprives the Dexron II mark of protection under the Lanham Act has no basis in the Act itself. Section 1115(b)(3) of the Act leaves unprotected a registered mark that is used to misrepresent the source of the goods. However, Dexron II licensees do not misrepresent the source of the transmission fluid; the licensee whose name appears on the product is the source of the fluid. A use of a trademark properly may display only the licensed mark and the name of the licensee. *See* 1 J. McCarthy, *Trademark and Unfair Competition* § 18.14(c) at 832.

■■■■ Lastly, Gibson argues that GM has abandoned its trademark by licensing its production to so many manufacturers that the name Dexron has become merely a generic term. Although a naked or uncontrolled license may provide the basis for an inference of abandonment of a trademark, *Carl Zeiss Siftung v. V.E.B. Carl Zeiss, Jena,* 293 F.Supp. 892, 917–18 (S.D.N.Y. 1968), *modified on other grounds,* 433 F.2d 686 (2d Cir.1970), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971), a controlled licensing program will not, *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358, 367 (2d Cir. 1959). The critical question in determining whether a licensing program is controlled sufficiently by the licensor to protect his mark is whether the licensees' operations are policed adequately to guarantee the quality of the products sold under the mark. *Universal City Studios, Inc. v. Nintendo Co.,* 578 F.Supp. 911, 929 (S.D.N.Y.1983), *aff'd on other grounds,* 746 F.2d 112 (2d Cir.1984). Uncontradicted evidence presented by GM at the hearing established that GM specifies the various processes for refining its Dexron II fluid and carefully monitors the licensees' products. The district court correctly concluded that the Dexron II mark had not been abandoned. Although Gibson's argument that the Dexron II mark has become generic because it no longer identifies a single source of origin remains a question of trademark law for the district court to consider, it does not convince us that the court abused its dis-

cretion in finding that General Motors was likely to prevail on the merits.

Appellants' final argument, that the action should be dismissed as to Roth, was not made below and therefore cannot be raised on appeal. *Vintero Corp. v. Corporacion Venezolana de Fomento, supra,* 675 F.2d at 515. Moreover, Roth, who has interposed both a counterclaim and a cross-claim, is hardly in a position to contend that he is not a proper party.

We have given careful consideration to appellants' remaining arguments, none of which has sufficient merit to warrant discussion.

The district court's grant of a preliminary injunction is affirmed. The appeal with respect to the issuance of the temporary restraining order and the writ of seizure is dismissed for want of jurisdiction.