TOMMY HILFIGER LICENSING, INC., Nautica Apparel, Inc., Polo Ralph Lauren, L.P., the Timberland Co., Guess?, Inc., Nike, Inc., Adidas AG, Adidas AM., Inc., Fila USA, Inc., and D.C. Comics, Plaintiffs,

v.

TEE'S AVE., INC., Tommy Tam, Kwong Mei Nam, M & N Co., Inc., Sweatshirts & More, Inc., SSM Sportswear, Abio Sport, Inc., Frederick Wedin, Sammy Zamir, Sid Block and Abraham Spitzer, Defendants.

No. 95 Civ. 9358 (DAB).

United States District Court, S.D. New York.

April 29, 1996.

Gursky & Blau (Barbara Kolsun, of counsel), New York City, for plaintiffs.

Emanuel F. Saris, New York City, for M & N defendants.

## MEMORANDUM AND ORDER

BATTS, District Judge.

The Plaintiffs bring this action pursuant to the Lanham Trade–Mark Act, 15 U.S.C. § 1114, for trademark infringement allegedly committed by the Defendants. Defendants M & N Co., Inc., Sweatshirts & More, Inc., SSM Sportswear, Abio Sport, Inc., Frederick Wedin, Sammy Zamir, Sid Block and Abraham Spitzer (collectively "M & N Defendants"), now move to dismiss the Complaint, Amended Complaint, Temporary Restraining Order and Preliminary Injunction.[1]

## I. BACKGROUND

On November 3, 1995, based on Plaintiffs' submissions, including Plaintiffs' Memorandum in Support of Motion for Temporary Restraining Order, Seizure Order, Expedited Discovery and Preliminary Injunction; Declaration of Dumpster Leech; Declaration of Barbara Kolsun; Memorandum in Support of Ex Parte Motion to Seal File; a proposed Ex Parte Order Temporarily Sealing the File; and a proposed Order Granting Ex Parte Temporary Restraining Order and Seizure Order, Order Granting Expedited Discovery, Order to Show Cause for a Preliminary Injunction, and Order Setting Bond, the Court took the following action:

The Court granted an ex parte Temporary Restraining Order, restraining Tee's Ave., Inc., M & N Co., Inc. and ten John Doe Defendants from, among other acts, continuing use of any of the Plaintiffs' trademarks.

The Court issued a Seizure Order, ordering the United States Marshals to remove specific counterfeit property, detailed in the Order, from the Defendants' properties, also detailed in the Order.

The Court issued an Order to Show Cause why a preliminary injunction should not be granted in the Plaintiffs' favor. A hearing was scheduled for November 16, 1995, and a briefing schedule set.

In addition, the Court granted expedited discovery, ordered that a $25,000 bond be set, and ordered the records temporarily sealed.

On November 7, 1995, the United States Marshal service executed the Seizure Order. The Order provided that property should be seized from "Tee's Avenue, Inc., 1205 Broadway, Room 304, New York, New York 10001 and M & N Company, 1205 Broadway, Room 203, New York, New York 10001 and 109 South 5th Street, 4th and 6th Floors, Brooklyn, New York 11211." The Marshals accompanied by John Malone, an investigator hired by the Plaintiffs, went first to 1205 Broadway. (Malone Aff. ¶ 3.) The tenants occupying the space told the Marshals that M & N Co., Inc. no longer occupied the area. (Id.) The Marshals then proceeded to 109 South 5th Street. (Id.) Upon arrival, the freight elevator operator not being present, Malone and two Marshals walked to the 6th Floor of the building. (Id.) An employee of a futon manufacturer advised the Marshals that the company that used to be on the 6th Floor only occupied half of the floor and moved to the 2nd Floor. (Id.) Once on the second floor, Barbara Kolsun, the Plaintiffs' attorney, joined the Marshals and Malone. (Kolsun Aff. ¶ 5.) Soon after her arrival, the building's landlord, Ken Stier, arrived and confirmed that the tenants who used to occupy the whole 6th Floor, now occupied only half of it and moved to the 2nd Floor. Those

---

1. The Court will consider dismissing the Amended Complaint only, as it has superseded the original Complaint; and lifting the Temporary Restraining Order. There has been no Preliminary Injunction entered against the M & N Defendants, hence, seeking this relief is not at issue.

tenants no longer occupied the 4th Floor. (*Id.*) The Marshals then proceeded to seize items from the 6th and 2nd floors of the building.

On November 16, 1995, counsel for the Plaintiffs and counsel for some of the Defendants appeared before the Court for a preliminary injunction hearing. Defendant M & N Co., Inc. was represented by counsel, who would possibly represent many of the John Does now named in the Amended Complaint. The Tee's Ave. Defendants (Tee's Ave., Inc., Tommy Tam, and Kwong Mei Nam) did not appear and were not represented, although they had been served prior to the hearing.[2] The parties present were directed to agree on a discovery schedule and the continuation of the Temporary Restraining Order. The Court entered a Preliminary Injunction against the Tee's Ave. Defendants, who did not appear at the hearing, and issued an order unsealing the court file.

On December 12, 1995, the Court so ordered a stipulation extending the Temporary Restraining Order until such time as a dispositive motion was decided, or the Court decided a motion for preliminary injunction.

On February 20, 1996, a Default Judgment was entered against the Tee's Ave. Defendants.

Defendants now move to dismiss the Complaint. Plaintiffs oppose the Motion.

## II. DISCUSSION

"On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of N.Y.,* 53 F.3d 465, 469 (2d Cir.1995) (citations omitted); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. City of*

N.Y., 974 F.2d 293, 298 (2d Cir.1992) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957))), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

The M & N Defendants move to dismiss the Amended Complaint and lift the Temporary Restraining Order on two grounds. First, the M & N Defendants argue that because the Marshals improperly executed the Seizure Order on behalf of the Plaintiffs, their Amended Complaint should be dismissed. Second, the M & N Defendants argue that the Court did not have, and the Plaintiffs did not provide, evidence sufficient to support the issuance of an ex parte Seizure Order, hence, their Complaint should be dismissed. The Defendants, although they request it, make no argument as to why the Temporary Restraining Order was improperly granted.

█ As to the Defendants' first argument, that the seizure order was improperly executed and hence dismissal of the Complaint is warranted, the Defendants' Motion is denied. Defendants argue that the seizure was wrongful because it violated Fourth Amendment standards; that the Marshals improperly searched the second floor because it was not stated in the Seizure Order; and that the Plaintiffs improperly opened mail not addressed to M & N Co., Inc. Even were the Court to find that the seizure was unlawfully executed, the proper remedy is not dismissal of the Complaint. 15 U.S.C. § 1116(d)(11) states, "[a] person who suffers damage by reason of a wrongful seizure ... has a cause of action against the applicant for the order ... and shall be entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will, and punitive damages in instances where seizure was sought in bad faith...." The Defendants have failed to show any facts or evidence to support or assert such claims. Hence, the Defendants' requested relief is denied.

---

2. The Orders signed by the Court on November 3, 1995, and the Amended Complaint, were all served on the Tee's Avenue Defendants prior to the hearing on November 16, 1995. The Court has received no communication from these Defendants.

Defendants next allege there was an insufficient basis on which to grant the ex parte Seizure Order. Title 15, section 1116 of the United States Code sets out the procedures for obtaining and granting a seizure order. The relevant parts of section 1116(d)(4)(B) [3] read:

The court shall not grant such an application unless . . . the court finds that it clearly appears from specific facts that—

(i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;

(iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods and services;

(iv) an immediate and irreparable injury will occur if such seizure is not ordered;

(v) the matter to be seized will be located at the place identified in the application;

(vi) the harm to the applicant of denying the applicant outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

(vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the application were to proceed on notice to such person. [4]

In regard to paragraphs (i) and (vii) the Court finds that, an order, other than an ex parte order, would not have been adequate to stop the infringement of the Plaintiffs' trademarks by the alleged infringers because once notice was given, it is alleged that the infringers would destroy or hide the counterfeit evidence. This is directly contrary to the purpose of Section 1114 which is to stop trademark infringement. The Court finds any other order would have allowed the destruction of evidence, whether it had been ordered on notice or whether there was no seizure. Plaintiffs' allege that an ex parte order was necessary; otherwise, the Defendants would have destroyed any evidence of counterfeit items in their possession. (Kolsun Decl. ¶¶ 54–56.) The Court finds that, based on the experience of Ms. Kolsun as represented to the Court in her Declaration, *id.*, it was likely the destruction of counterfeit items was imminent. *See Time Warner Ent. Co. v. Does,* 876 F.Supp. 407 (E.D.N.Y. 1994).

Furthermore, in satisfaction of paragraph (vi), the likelihood of destruction outweighed any harm to the Defendants, in light of the fact that the Plaintiffs' posted a $25,000.00 bond, the Marshals were permitted to seize only those items that were determined to be counterfeit, and the Plaintiffs were required, immediately after the seizure, to inspect the goods and return any items that contained authorized use of trademarks.

Turning to paragraph (iii), which is essentially the standard used in evaluating the grant or denial of a preliminary injunction, that is, the likelihood Plaintiffs will succeed on the merits, the Plaintiffs submitted facts in the Declarations accompanying their papers, sufficient to support a showing that the Defendants were in possession of counterfeit items. The Plaintiffs' attorney represented in her Declaration that she had knowledge of the fact that a retailer in Virginia bought infringing materials from the M & N Co., Inc. (Kolsun Decl. ¶ 51.) The Plaintiffs' investigators bought infringing items from the retailer, copies which were attached to the declaration, (Kolsun Decl. Ex. 10), who subsequently provided invoices indicating that he had bought them from Tee's Ave. Inc. and M & N Co., Inc. (Kolsun Decl. ¶ 51.) Furthermore, Plaintiffs' New York investigators, who are trained in recognizing infringing items, bought infringing items from the Tee's Ave. Defendants, copies of the items were attached to the papers. (Leech Decl. ¶¶ 4–5, Ex. 1.) Ms. Kolsun inspected all the seized items and asserted they all bore counterfeit marks of the Plaintiffs' trademarks. (Kolsun Decl. ¶ 52.) Ms. Kolsun also asserted that

---

**3.** 15 U.S.C. § 1116(d)(4)(A) provides that a sufficient bond be set, which was ordered in this case.

**4.** The following section is not in controversy:
(ii) the applicant has not publicized the requested seizure.

none of the Defendants were authorized to distribute items with the Plaintiffs' marks. (*Id.*) The Court finds these facts sufficient to show that the Plaintiffs would succeed on the merits against both Defendants named in the original Complaint.

Paragraph (iv) is identical to the standard used to grant a temporary restraining order or preliminary injunction—showing immediate and irreparable injury. "In a trademark action, a showing of confusion as to the source of the product ordinarily will establish that a risk of irreparable harm exists as to the reputation of the trademark sought to be protected." *General Motors Corp. v. Gibson Chemical & Oil Corp.,* 786 F.2d 105, 109 (2d Cir.1986); *Western Publishing Co. v. Rose Art Indus.,* 910 F.2d 57, 59 (2d Cir.1990). Here, the Plaintiffs' submitted copies of the Trademark Principal Register Forms for all the Plaintiffs, and copies of items secured in Virginia and New York. Plaintiffs' assert that the items seized in Virginia and New York are counterfeit. Those items are extremely similar and in most cases identical to the trademarks that are registered. Hence, there would be a likelihood of confusion and therefore irreparable injury if immediate action was not taken.[5]

Plaintiffs satisfied paragraph (v) of the statute in that the addresses stated in the Seizure Order were those that appeared on the invoices provided by the retailer in Virginia and the Defendants' working addresses.

Furthermore, the New York investigators had seized items from one of the addresses.

The Defendants also take issue with 15 U.S.C. § 1116(d)(5)(B). However, the seizure order states two specific addresses and the items that may be seized. (Seizure Order at 6.) Hence, the Order complied with Section 1116(d)(5)(B).

### III.  CONCLUSION

The Court confirms the Seizure Order and Defendants' motion is DENIED in its entirety.

SO ORDERED.

---

[5] "Tommy Hilfiger" is a trademarked name. (Kolsun Decl. Ex. 1.) The Plaintiffs bought from Defendants t-shirts with "Tommy Hilfiger" stitched across the front in 1½ inch letters. (Leech Decl. Ex. 1; Kolsun Decl. Ex. 10.) "Nautica" is a trademarked name. (Kolsun Decl. Ex. 2.) The Plaintiffs bought from Defendants t-shirts with "Nautica" stitched across the front in 2 inch letters. (Kolsun Decl. Ex. 11.) Ralph Lauren has several trademarked names and images. (Kolsun Decl. Ex. 3.) The Plaintiffs bought from Defendants t-shirts containing three of those trademarks—the word "Polo," the words "Ralph Lauren," and the insignia of a man riding a polo horse with the polo stick raised above his head poised to hit an imaginary polo ball. (Leech Decl. Ex. 1; Kolsun Decl. Ex. 10.) "Timberland" is a trademarked name. (Kolsun Decl. Ex. 4.) The Plaintiffs bought a T-shirt with "Timberland" stitched on the front of the shirt in 1 inch letters, also was a picture of a tree in a circle with three dark lines below the tree, also trademarked by Timberland. (Leech Decl. Ex. 1; Kolsun Decl. Ex. 10.) "Guess" and a upside down triangle with a question mark in the center are trademarked. (Kolsun Decl. Ex. 5.) Plaintiffs bought t-shirts with three inch letters across the front and the upside down triangle. (Leech Decl. Ex. 1; Kolsun Decl. Ex. 10.) "Nike" and the rounded check-mark figure that usually appears with it, are both trademarked. (Kolsun Decl. Ex. 6.) Plaintiffs also recovered items from the Defendants with these depictions. (Leech Decl. Ex. 1; Kolsun Decl. Ex. 10.) "Fila" is also trademarked. (Kolsun Decl. Ex. 7.) Items were found with that word stitched on them. (Leech Decl. Ex. 1; Kolsun Decl. Ex. 10.) "Adidas" and the three-leafed flower insignia that usually accompanies it are trademarked. (Kolsun Decl. Ex. 8.) These depictions also appear on items bought from the Defendants. (Kolsun Decl. Ex. 10.) Finally, "Batman" and the depiction of a bat in the shape of an oval are trademarked. (Kolsun Decl. Ex. 9.) T-shirts with these depictions were purchased from the Defendants. (Kolsun Decl. Ex. 10.)